The opinion of the Court was afterwards delivered to the following effect by
Parsons, C. J.
[After stating the facts agreed, and reciting the provisions of the act of incorporation referred to.] It is admitted by the counsel for the defendants, that the plaintiff has brought himself within the letter of the act, so as to be a member of the Episcopal society in Sciiuaie; but it has been ingeniously argued *502 that the statute ought not to be construed according to the letter, but according to the spirit and true intent of it, so as to be consistent with the declaration of rights, and particularly the third article.
If this act is repugnant to any part of the constitution, it is without doubt void. The intent of the third article seems to be misunderstood. The great object of it was to enjoin on the legislature the causing public Protestant teachers to be elected and maintained by the several incorporated religious societies in the state, and to guard against an ecclesiastical hierarchy, and a religious test, by prohibiting a subordination of one denomination of Christians to another. But it was not the intent, neither is it the language, of that article to prevent the legislature from making new religious incorporations, or from setting off the members of any religious incorporation to another religious incorporation, whether [*573] composed of the *same, or of a different denomination of Christians. And it is very common for the legislature, in creating a new religious incorporation, to give liberty to any of the members of it to recede from it, or to permit others in the neighborhood to join it, they manifesting their election by some act of public notoriety, so that the right of assessing corporate taxes may be ascertained and well known.
Another clause in the third article has been urged, which authorizes any person to direct that the money paid by him for the support of public religious worship shall be paid to the public teacher of his own religious sect, if there be any on whose instructions he attends Hence it has been argued that the legislature are legally incompe tent to set off any member of a religious corporation, and annex him to another, unless the two corporations be composed of two different denominations of Protestant Christians, and the member be set off conscientiously of the same denomination with the society to which he is annexed.
But the third article ought not to have this narrow construction. Men of liberal minds may, with a good conscience, attend indifferently the public worship of different denominations, and may elect their denomination from mere local convenience, or from other good causes. Thus, in the case of Montague vs. The First Parish in Dedham, (ante, 269,) in which it appeared that several Congregationalists, because they could not obtain accommodations for themselves and their families in the Congregational meeting-house, had joined the Episcopal church in that town, it was holden that, having, with good faith, and not merely colorably, joined the Episcopal church, and claimed to be, and acted as, members of it., they were entitled to have their ministerial taxes paid to Mr. Montague, their own minis *503 ter. And all which this clause in the third article requires is, that the public teacher be of his .denomination.
Thomas and K. Whitman for the plaintiff.
But it is unnecessary further to consider this clause, for it is not relevant to the case at bar, it applying only to the case where a member of one religious society chooses to have his taxes paid to the public teacher of another, of which he is not a member. And it cannot be construed to limit the * power of [*574] the legislature, so frequently exercised, of setting off a member of one religious society to another, even when both the societies are of the same denomination.
The inconvenience resulting from the power given to the members of several religious corporations, of changing their corporate relations at their pleasure, has been argued.
If the construction of this statute was doubtful, we ought to examine into the inconveniences that might result from any construction, so as to give the construction attended with the least inconvenience. But the language of the statute in this case is explicit, and no doubt can arise in its construction. — If there are any inconveniences, they result from the positive provisions of the legislature. We are, therefore, not to presume that mischiefs can arise from the discretion of the legislature upon a subject within its power. If any unforeseen mischiefs should arise, it is with the legislature to remove them, and not with us to alter the law.
It has also been argued that the subsequent statute of 1799, c. 57, providing for public religious worship, has altered this act, because this last statute enjoins on all corporate religious societies to support their public teachers; and a society may be disabled to raise this support, if the legislature can annex any number of its members to another religious society.
This last statute cannot, in our opinion, have the construction contended for. It is not within its intention or purview to affect the right of the legislature to create or alter corporations created for the support of religious worship, or to repeal any provisions before made on that subject.
Upon the whole, we are satisfied that the plaintiff is a member of the Episcopal society in Scituate, and not taxable by the assessors of the north parish in Hingham.

Let judgment be entered for the plaintiff.