## KIMBALL *v.* THE COCHECHO RAILROAD.

Where the only way of access to the plaintiff's land was over a tract called "the Factory Field," which was the property of those under whom the plaintiff held his land, and which was owned by them when his land was conveyed to him, or over the land of strangers, it was *held* that he had a way of necessity over the Factory Field.

CASE, for disturbing the plaintiff's right of way.

The writ was dated on the 31st of December, 1850. The right of way, stated in the declaration, was claimed by the plaintiff, both by prescription and as a way of necessity.

It was proved and admitted on the trial that Ephraim Ham, on the 20th of April, 1803, owned the mill lot and privilege claimed by the plaintiff, and he also owned the land lying due north from the mill lot, and between it and

land then owned by the plaintiff, and bounded southerly by the mill lot, northerly by the plaintiff's land, westerly by Moses and Samuel Kimball's land, and easterly by lands of Joseph W. Gage. The mill lot was bounded southerly and westerly by Cochecho river, easterly by Gage's land, and northerly by the above described .tract of land owned by Ephraim Ham. The following plan shows the localities material to be understood.

Gage's land embraced that part of the Factory field lying easterly of the mill lot, and the residue of the Factory field is the land owned by Ham, on the 30th of April, 1803, in connection with the mill lot. It was shown that said Ham, on the 30th day of April, 1803, conveyed the mill lot and privilege to one Hanson Varney, who, on the 13th of August, 1803, conveyed the same to the plaintiff. The whole tract of land marked upon the plan as the Factory field, at and prior to the time of the laying out and constructing of the defendants' railroad, was owned by the Cochecho Manufacturing Company.

To prove title to the way by prescription, the plaintiff proved that he used the way across the Factory field twenty-seven years ago, and continued to use it as it then was -until

within about seventeen years; a part of the Factory field over which a portion of the way passed was ploughed up, and the pathway was changed, and made to diverge from its own line for the distance of about twenty rods, diverging at the broadest part of the variation about fifty feet, and at the place where the track of the railroad crosses the way, about twenty-seven feet, and coming again into the original way, about two rods south of the south fence of the railroad, and before reaching the mill lot, and also coming into the old way north of the railroad, before leaving the Factory field. It did not appear by whose order in particular or wish the change in the line of the way was made. The Factory field was, at the time, occupied by one Williams, the agent of the Factory Company.

The Factory field was owned by the Cochecho Manufacturing Company in 1848.

The defendants were a railroad corporation, duly established as such by the laws of this State. Due notice of the laying out of the railroad over the way and through said Factory field was given to the Manufacturing Corporation, May 27, 1848, and the doings of the commissioners, under date of June 20, 1848, were returned to the secretary of State, October 10, 1848.

Since that time the corporation have constructed their road crossing the alleged way, and have built a bridge over their road a few rods from the line of the old way. Neither the defendants nor the owners of the field ever made or tendered a title to a way over the bridge to the plaintiff, nor has the plaintiff ever used it.

It was admitted that due notice was served on the railroad corporation, according to the allegation in the writ.

A verdict was taken for the defendants, subject to the opinion of the superior court upon the foregoing case.

*Woodman*, for the defendants.

I. The proof shows no way by prescription.

1.   If the plaintiff has acquired a way by prescription, it is only a *qualified* way—a way for agricultural purposes for himself and servants, and not a way to a mill privilege or for mill purposes.   1 Wool. on Ways 34, 35–49; *Taylor* v. *Whitehead,* Doug. 744.

2.   The proof is not so extensive as the allegation, and the verdict on this account should stand.   1 Wool. on Ways 245, 286, 287; 1 Wool. on Ways, (article on pleading;) 1 Greenl. Ev. 63; 2 Greenl. Ev. 658; *Lawton* v. *Ward,* Ld Raym. 74.

3.   The defendants' title to their track began by relation, on the 27th of May, 1848.

4.   The bridge is no admission of the plaintiff's right of way, for the defendants were bound to provide a way for the owners of the field.

II.   Ways of necessity do not exist in this State.   Rev. Stat. ch. 49, § 1; ch. 52, § 7; 2 Greenl. Ev. 658; *Cochecho Man. Co.* v. *Whittier,* 10 N. H. Rep. 305; 1 Saund. 323, note 6.

1.   No private way could be laid out in England, except by special act of parliament.

No ways of necessity are named in the English books till the time of Rolle, who says that a way of necessity exists to land *wholly surrounded* by land of the grantor, and for authority cites a dictum of Yelverton.   'Yet Yelverton's Reports show no such law.   2 Rolle, Ab. 60, pl. 17.   He questions the right of a way of necessity, where the land is not wholly surrounded by land of the grantor.   2 Rolle, pl. 18.

Most of the cases cited by the plaintiff fail to sustain his case.   Such ways are received with no indulgence.   1 Wool. on Ways 290.

2.   The plaintiff had no necessity for this way.   He might just as conveniently have passed over the land of Gage at the time he purchased the mill lot.   '

3.   If the plaintiff have a way of necessity, the defen-

dants have a right to locate it over their bridge; no tender of the bridge was necessary. It was there and open for all to pass who had any right to cross the Manufacturing Company's field. 1 Wool. on Ways 22. The Manufacturing Company have made no complaint of the crossing.

4. Ways of necessity are by implied grant, and are not to be enlarged by occurrences subsequent to the grant, as by establishing mills, or opening mines, or by other changes.

5. The only reason which was first given in the books for a way of necessity was, that " the land should be cultivated."

*Kimball* and *Soule,* for the plaintiff.

The plaintiff claims the way by prescription. And his title is clear, unless the variation in the line defeats it.

The variation is small, both in length and width, and makes the way straighter, and is in the original track, where it enters upon and where it leaves the Factory field. The right of way, in the plaintiff, is not prejudiced by this slight variation, because there is nothing in it which shows any intention of relinquishing his right of way. Private easements are not lost by slight interruptions of the user, or slight alterations in the mode of enjoyment, when the circumstances do not show any intention of relinquishing it. 2 Greenl. Ev. 554; *Doe* v. *Hilden,* 2 Barn. & Ald. 791. The only evidence of any interruption is, that a portion of the field was ploughed up. This is not sufficient to destroy the right of the plaintiff in a way. The exclusive use and occupancy, by the owners, for agricultural purposes, will not destroy the right of way. *Wright* v. *Freeman,* 5 Har. & J. 465. There was no interruption of the right of the plaintiff to a way across this field. The interruption, to defeat a claim of a prescription, must be the interruption of a right, and not simply an interruption of the use or possession of it. 2 Greenl. Ev. 545; 2 Cr. & J. 826.

The evidence did not show, nor tend to show, any denial

of the right of the plaintiff, and the mere fact of ploughing up the land without such denial is not sufficient. *Barker* v. *Clark*, 4 N. H. Rep. 380. '

The plaintiff also claims the way as a way of necessity. The mill lot of the plaintiff, when he purchased it, was surrounded on all sides but one by land of his grantor and the Cochecho river. It is well settled that a way of necessity exists when to the land granted access can only be had over the land of the grantor. It is unnecessary to cite authorities. In the case at the bar, the only way of access to the mill lot is over that part of the Factory field which was the property of those under whom the plaintiff holds the mill lot, and by whom it was owned at the time of the conveyance of the mill lot to him, or over land at that time owned by third persons, and for the last twenty years or more a part of the same Factory field.

There are numerous cases which show that, under these circumstances, the grantee has a way of necessity for equally strong reasons, as where the land granted is surrounded on all sides by the land of the grantor. Many of these cases also show that a variation in the line of a way of necessity does not impair the right of him who had the way. Wool. on Ways 20; *Perham* v. *Weed*, 2 Mass. Rep. 203; *Holmes* v. *Seely*, 19 Wend. 507; *Howton* v. *Frearson*, 8 Tenn. Rep. 50; *Buckby* v. *Coles & a.* 5 Tenn. Rep. 311; *Holmes* v. *Young*, 2 Bing. 76; *Pomfret* v. *Ricroft*, 2 Wm. Saund. 323, note 6; *Gayetty* v. *Bethune*, 14 Mass. Rep. 56.

GILCHRIST, C. J. It has been held that if A. have an acre of ground in the middle, and surrounded by other of his grounds, and enfeoff B. of that acre, here of necessity a convenient way arises on B.'s behalf to go over A's ground, as a necessary incident. Noy. 123.

It is the same though the close aliened be not totally enclosed by the grantor's land, but partly by the land of strangers, for the grantee may not go over the stranger's

land. 2 Roll. Abr. 60. The reason given is, because it is for the public good that the lands should not remain unoccupied. 2 Lutw. 1487; *Howton* v. *Frearson*, 8 T. R. 50.

It is said, in the plaintiff's argument, that the only way of access to the mill lot is over that part of the Factory field which was the property of those under whom the plaintiff holds the mill lot, and by whom it was owned at the time of the conveyance of the mill lot to him, or over land at that time owned by third persons, and for the last twenty years or more a part of the same Factory field.

In the case of *Perham* v. *Wead*, 2 Mass. Rep. 203, it was held that if a judgment creditor extends his execution on a part of his debtor's land, so as to leave him no passage from the remainder of the land to the highway, the law gives him a way of necessity over the land extended upon. It was said by *Parker*, J., that the creditor " might have taken the land in the rear with the house, or he might have left a passage way for the debtor, and had more land set off to him in lieu of that so left. He, therefore, must be considered as having chosen to take the whole front of the debtor's land, knowing at the time that he shut him from all communication with the private or public ways of the town."

It was alleged in the declaration that the plaintiff had no other way from his dwelling-house and close, described in the declaration, to the street or highway and back, but through and over the premises so extended upon by the said execution, without trespassing upon the lands of others, in which he had no right.

It is unnecessary to determine the question whether the plaintiff had a way by prescription. He had a way by necessity, and is, therefore, entitled to recover, and the defendants cannot retain the verdict.

*Verdict set aside.*