## SMITH v. WIGGIN.

The owner of two adjoining lots, Nos. 5 and 6, fronting on M street, the southerly of which—No. 5—was bounded on the south by C street, in 1833 conveyed No. 6, "with right of passage-way from C street to the rear of the store,"—there being at that time a store on No. 6, extending back 45 feet from M street. From 1833 to 1860, some 20 feet at the rear end of No. 5 was vacant; and there was evidence tending to show that during that period the occupants of No. 6 used a passage-way across No. 5 from C street to the rear of their store on a particular line. In 1860, the defendant, being the owner of No. 6, extended his building on that lot to the rear, so as to obstruct the passage where it had been so used, but still left a passage-way 12½ feet wide at the rear of the lot, which the jury found to be reasonably suitable, convenient, sufficient, and necessary for the purposes for which a right of passage was granted from C street to the place where the rear of the store was in 1833.

*Held,* that the call of the deed was answered by any passage-way from C street to the rear of the store as it was in 1833, such as would be reasonably convenient and suitable for the purposes for which it was originally granted.

*Held,* also, that as the use was substantially in accordance with the terms of the grant, it must be deemed to have been under the grant and not adverse ; and that no prescriptive right was thereby gained.

The main controversy related to the obstruction of the way. The writ contained one count for an independent injury alleged to result from the defendant's overhanging eaves, to which there was a confession. The jury returned a verdict for the plaintiff as to the eaves, but on the other counts the verdict was for the defendant. It was ordered that each party recover costs on the issues found in his favor.

CASE, by Harriet S. Smith against Charles W. Wiggin, for obstructing a way which the plaintiff had across the defendant's land by erecting a store on it, September 10, 1860, and for building the eaves of the store beyond the defendant's line over the plaintiff's land.

There were five counts in the writ. To the fourth, which related to the eaves, the defendant filed a confession of the plaintiff's right to recover $25 damages, and pleaded the general issue to the rest of that claim. To all the other counts the general issue was pleaded, with a brief statement. The jury found the plaintiff's damages on the fourth count to be $30.08 ; and on the other counts the verdict was for the defendant, and the plaintiff moved to set aside the verdict.

The defendant owns lot number five, bounded on the west by Main street, and on the south by Chapel street. This lot is forty-six feet on Main street and one hundred and sixty-one on Chapel street. The plaintiff owns lot number six, bounded on the west by Main street, and on the south by number five. Number six is twenty-four feet wide and seventy feet long, the twenty-four feet being on Main street. In 1825, Waldron owned both lots and a store on number five. Number six was then vacant. In 1826, Palmer, having a lease of number six, built a store thereon, twenty feet on Main street, and running back thirty feet. In 1827 he added fifteen feet to the rear, and July 29, 1833, he took a conveyance of the lot from Waldron, " with right of a passage-way from Chapel street to the rear of the store." November 29, 1837, Palmer conveyed the lot to Stackpole " with right of a passage-way from Chapel street to the rear of the store." April 1, 1839, Stackpole conveyed to Hurd and S. L. Wiggin, " with a right of passage from Chapel street to the rear of the store on said lot at any and all times with teams," &c. S. L. Wiggin was the plaintiff's first husband. November 18, 1845, Hurd conveyed his interest to S. L. Wiggin. At the December term, 1859, the plaintiff was divorced from S. L. Wiggin, and number six was assigned to her as part of her alimony, " with a right of passage from Chapel street to. the rear of said store on said lot at any and all times with teams, &c., the aforesaid premises being the same Thomas J. Palmer bought of Waldron, by deed July 29, 1833, recorded," &c., " and the same conveyed by Stackpole to Hurd & Wiggin, by deed dated April 1, 1839, recorded," &c. In 1846, the store on number six was extended back twenty-five feet, by S. L. Wiggin, making it seventy feet in length, and as long as the lot. September 27, 1859, Waldron conveyed number five to the defendant, " reserving S. L. Wiggin's right of passway." The original store on number five extended thirty-four feet back from Main street. When number six was conveyed to Palmer in 1833, and by him to Stackpole in 1837, and by him to Hurd & Wiggin in 1839, the store on number six was twenty feet by forty-five, the front end of twenty feet touching Main street, and the sides not touching the sides of the lot ; and the rear end of the lot, twenty-four feet by twenty-five, was vacant. The plaintiff claims that the back door of that store was then in the south side of it, near the south-east corner. This door has since been moved east. The plaintiff claims a way from the place where the door was in 1833 to a certain point on Chapel street, a distance of about fifty-five or fifty-six feet, on a certain line nearly parallel with Main street. In 1860, the defendant extended his store back about eight feet beyond

that line, leaving in the rear of his store a passage from Chapel street to number six, twelve and a half feet wide at Chapel street, and gradually increasing to the width of thirty feet at number six; and he claims that this way is reasonable, suitable, and convenient for the plaintiff, and that she is not entitled to any other way. Said addition of eight feet is the obstruction of which the plaintiff complains. The plaintiff placed her claim to a way over the land covered by said eight feet of the rear end of the defendant's store, on two grounds: 1. Grant, and under that grant a way located at that place by understanding and use. 2. Prescription.

Subject to the defendant's objection, the plaintiff introduced the following testimony:

PALMER. I occupied the store on number six from the time I built it until two years after I sold it to Stackpole; the back door of the first store was in the centre of the rear end of the store; when I added the fifteen feet to the rear in 1827, the back door was put near the south-east corner on the south side, I think within a foot or two of the corner; I was Waldron's agent in the care of number five; in 1834 or 1835, I think, as Waldron's agent I extended the store on number five back sixteen feet; at the same time I built a fence and gate on Chapel street, back of the sixteen feet addition; suppose I put the gate across the passage where I thought most convenient; think the fence and gate extended about twenty feet; can't tell where the gate was, whether on one side or in the middle of the twenty feet; the sixteen feet addition projected out toward Chapel street the width of a hogshead of molasses for a door to roll hogsheads in; before the sixteen feet addition was put on, the passage used by me was over the ground on which that addition was built; after the addition of the sixteen feet, the passage was along side of that; located it myself where I thought most convenient.

*Cross-examination:* Before the addition of the sixteen feet there was no particular place of entrance from Chapel street; we had a kind of path to go, but went where we had a mind to; it was kind of a common; people entered and returned over such part of it as they pleased; after the gate was put up, we went through that; were not particular where we went; used to put my empty boxes and hogsheads out there; having charge of the property, I wasn't particular where I laid them; put wood and shingles there where I could find most convenient, where I could pile them off the handiest; used the back yard as a store-yard, and so did Page who occupied the store on number six, after I left it, until 1839.

*Direct examination resumed:* Wasn't particular to use the rear end of my lot as a store-yard; left room on number five for a passage.

MOULTON. I occupied the store on number five from 1841 to 1845; while I occupied it there was a small building in the rear of the sixteen feet addition in the corner; we used it for a storehouse; it was there when I went there; it was about eight by ten feet; I sold it; Capt. Porter, agent for the Waldron property, urged me to take it away;

leased the store of him ; he wanted me to take it away because it set in the passage ; he notified me to remove it, as he said S. L. Wiggin complained it interfered with the passage in and out with teams ; that was the occasion of my removing it ; think I removed it two years after I went into occupation of the store ; the passage-way used by S. L. Wiggin was at the east end of the storehouse ; he went close up to the storehouse ; it was taken away ; do n't recollect how he passed in after that ; when I went into the store, Porter notified me I should have to move the storehouse whenever Wiggin complained ; moved it a year or two after I went in, and soon after Porter notified me ; S. L. Wiggin never made any complaint to me.

*Cross-examination :* The storehouse was within a foot or so of the sixteen feet addition ; it was put on by Louis McDuffee and Enoch Whitehouse ; do n't recollect any gate.

*Direct examination resumed :* I sold the storehouse, I think, in 1843, about two years after I bought it ; bought it of McDuffee & White-house, of whom I bought the stock of goods in the store ; it was a temporary building made of rough boards.

HAYNES. Was clerk of a union store in number five, think from 1849 to 1853 ; S. L. Wiggin was in number six, I think ; there was a passway near the sixteen feet addition ; they went so near it that sometimes they hit the east corner of it on Chapel street ; do n't recollect a fence across the passage ; there was a door in number six, near in line of passway, perhaps a little west of it.

*Cross-examination :* They did n't drive straight to that door ; they would turn round and back up to it ; it was a common open yard, and used as such ; think there was no gate or fence across the pass-way.

BUNCE. Have lived in Dover little over twenty years ; drove truck team ; was in the employ of S. L. Wiggin some ; sometimes had two horses, sometimes three, sometimes double, generally tandem ; have teamed to and from the store on number six from Chapel street ; worked for S. L. Wiggin about two years ; went there in fall of 1854 ; there was a fence on Chapel street ; the entrance on Chapel street was from two to four feet from the store on number five ; there was a gate there ; it swung from the store ; hung on the opposite side from the store ; just before I got to back door of number six, I used to swing round and back up ; sometimes went close to store on number five, sometimes not so nigh.

*Cross-examination :* Sometimes went close to fence on the other side of the passage ; generally close to the store ; turned the team in there ; went where it was most handy.

*Direct examination resumed :* There was a fence from Chapel street towards number six, on the east side of the passage, near where the fence is now ; think defendant's store is now as much as seven feet on the passage that I used.

S. F. WIGGIN. Am son of plaintiff and S. L. Wiggin ; don't recollect any fence on Chapel street ; the store on number six was as long

when I first recollect it as now; defendant has built on the passage-
way we used.

When the plaintiff's evidence was closed, the court ruled that, upon
the evidence, the plaintiff was not entitled to a way fixed on any par-
ticular line from Chapel street to the place where the back door of the
store on number six was in 1833; and that the evidence did not entitle
the plaintiff to recover for obstruction of a way, if the way left by the
defendant in the rear of his store was such as was reasonably suitable,
convenient, sufficient, and necessary for the purposes for which a right
of passage was granted from Chapel street to the place where the rear
of the store on number six was at the time of the conveyance to Palm-
er in 1833, and at the time of the conveyance to Hurd & Wiggin in
1839, and before S. L. Wiggin put the addition of twenty-five feet on
the rear of number six; and to this ruling the plaintiff excepted.
The jury found that the way left by the defendant was such as the rule
laid down by the court required. The pleadings, papers, and plans
may be referred to as part of the case.

The defendant moved for costs on the issues found for him. The
principal controversy between the parties was and is, whether the
plaintiff has a right of way over the place covered by about eight feet
of the rear of the defendant's store. The amount of damages for the
overhanging eaves is a matter trifling and insignificant, compared with
the plaintiff's claim of a right of way over said eight feet of land.
The court reserved the question of costs.

*T. J. Smith,* for the plaintiff.

The rule is settled beyond controversy, that twenty years' user of
an easement is evidence of a right to such easement, provided such
user is under a claim of right, and all parties concerned are free from
disabilities and seized of estates in fee. *Watkins* v. *Peck,* 13 N. H.
360; *French* v. *Marston,* 24 N. H. 461; *Wallace* v. *Fletcher,* 30 N. H.
434; 3 Kent's Com. 442; *Campbell* v. *Wilson,* 3 East. 294; *Livett* v.
*Wilson,* 3 Bing. 115.

In the case at bar, the plaintiff asserts,—and for present purposes
it must be considered as proved,—that he, for more than twenty years,
continually and uninterruptedly made use of the land of the defend-
ant, from Chapel street to his back store door, as it was in 1833, and
in a line nearly parallel with Main street, not only for the purpose of
passage over, but also for the purpose of going on, of turning teams
upon, of backing teams upon, and of standing-space for teams while
loading and unloading merchandise, &c., and of going from for the
convenience of his store. He, therefore, has gained a right to the
same by prescription, and his right is commensurate with the use.
*Kent* v. *Waite,* 10 Pick. 138; *Bliss* v. *Rice,* 17 Pick. 23; *Miller* v.
*Garlock,* 8 Barb. 153.

The twenty years' user of this particular way, and of the extent
used, must be held then to establish a prescriptive title to it and to the

extent stated, unless the same is rebutted or restricted on account of some other state of facts. But how rebutted? True, this plaintiff had a grant of " a right " of a passage-way from Chapel street to the rear of the store; but the rear of the store at the date of the grant was manifestly the back end of the plaintiff's store, to wit, forty-five feet from Main street, there being a vacant lot of the plaintiff's beyond, twenty-four by twenty-five feet in extent. But the rear of the store is not, and was not, a terminus of the way used by the plaintiff and her grantors.

This grant is only of a passage-way across the defendant's land, and would be satisfied so long as the defendant left a convenient and suitable passage-way, while the user was much more, to wit, of a right to enter, to turn around with teams, to stand with teams for the purpose of loading and unloading, &c., upon the defendant's land;—the user, then, was not consistent with the grant, and cannot be supposed to be under it,—and the grant of some rights can be no obstacle to the acquisition of others by grant, by prescription, or any legal mode. A user, long enough to give a prescriptive title of a carriage-way, cannot be restricted by a previous grant of a foot-way in the same place. *Atkins* v. *Bordman*, 20 Pick. 300.

The grant, certainly, did not authorize the use which was made of the defendant's land, and the defendant's grantors might have objected to such use, but they did not; and their silence for this long period is an acknowledgment of the plaintiff's right to use their land as he has used it, and this right the defendant is now estopped from denying. *Wallace* v. *Fletcher*, before cited, page 452.

Again: it will be observed that Palmer, in 1834 or 1835, being then the owner of the plaintiff's land and the agent of the defendant's grantor, located this passage-way, and located it in the place where the defendant's last addition now stands; and from that time it was used in this identical place until this last addition was put up. Now parties may, by agreement, establish a line between their lands which will be conclusive upon all claiming under them; and long-continued acquiescence is evidence of an agreement to a line and to a location of the same. *Orr* v. *Hadley*, 36 N. H., and cases cited; *Dudley* v. *Elkins*, 39 N. H. 88.

And we are unable to see why they may not establish the boundaries of a way by agreement and long continued acquiescence in its use in a particular place, and thus locate it so as to render such way so located conclusive against all parties. Certainly, when a way is granted without designating the place, long continued use fixes it, and the grantor cannot alter its course. 2 Hilliard's Real Property 9; *Hamilton* v. *White*, 4 Barb. 62.

The grant, then, and the long continued user of this particular way, does establish the plaintiff's right to it, to wit, the way obstructed by the defendant; and the court, therefore, erred at the trial. So, also, we say that the court erred in ruling that " if the way left by the defendant in the rear of his store was such as was reasonably suitable,

convenient," &c., the instructions, we submit, should have been "if the way left was as suitable, convenient, &c., as before." *Atkins* v. *Bordman,* 20 Pick. 300, before cited.

As to the question of costs, we cite *Eastman* v. *Holderness,* 44 N. H. 18.

*Thomas E. Sawyer* and *Small,* for the defendant, as to the question of costs, cited Gen. Stats., ch. 214, sec. 2 ; *Smith* v. *Boynton,* 44 N. H. 529 ; *Bartlett* v. *Hodgdon,* 44 N. H. 472 ; *Belknap* v. *Railroad,* 48 N. H. 388 ; *Meacham* v. *Jones,* 10 N. H. 126. To the other points in the case, they referred to *Johnson* v. *Kinnicutt,* 2 Cush. 153 ; Wash. R. P. 53–63 ; 2 Greenl. Ev., sec. 545 ; *Comstock* v. *Van Deusen,* 5 Pick. 163.

LADD, J. It is to be understood that the way claimed by the plaintiff, as described in the second and third counts of her declaration, has been covered and obstructed by the eight feet addition built on to the rear of the defendant's store ; and the question presented by the case is, whether there was competent evidence offered at the trial, from which the jury could have legally found a right of way in favor of the plaintiff located in that place.

The plaintiff's counsel, in his brief, admits that the express grant of a way contained in the original deed, under which the plaintiff derives her title to number six, would be satisfied so long as the defendant left a convenient and suitable passage-way ; which is, beyond doubt, correct.

But he says the evidence shows that the user has been of much more, and that, being inconsistent with the grant, it cannot be supposed to have been under it. In other words, he says that a grant is to be presumed from the evidence of twenty years' use, materially different from the grant that was actually made when the deed from Waldron to Palmer was executed, July 29, 1833.

This position cannot be sustained. The grant was of a right of passage-way from Chapel street to the rear of the store. The evidence showed a use of the way in near conformity, to say the least, with the terms of the deed. That other portions of the lot were used for teams to stand upon, or for turning teams, is of no consequence. Whether an easement, or any right, has been gained by prescription or adverse possession, outside the right of passage-way from Chapel street to the back of the store, is not a matter now before us. The suit is to recover damage for obstructing the passage-way.

Now, the continued use of the way was authorized by the deed. The owners of the defendant's estate had no right to object to it. The introduction of the deed, therefore, explains the use, and rebuts any presumption that might otherwise arise from it. The use being substantially in accordance with the grant, it is quite elementary that it must be held to be under the grant. 2 Greenl. Ev., sec. 545 ; *Rex* v. *Hudson,* 2 Str. 909 ; *Addington* v. *Clode,* 2 W. Bl. 989 ; *Atkins* v.

*Bordman,* 20 Pick. 291 ; S. C., 2 Met. 457. And the evidence which, under other circumstances, might have tended to establish a prescriptive right, was clearly inadmissible for that purpose in the face of the deeds. Nor was it admissible to show a practical location by the parties. As we have seen, the use must be held to have been under the deed, and in substantial accordance with its terms. The deed does not in terms locate the way, but gives to the occupants of number six the right to use a passage-way from Chapel street across the defendant's lot to the rear of their store. The evidence offered upon this point had no tendency to show that what they did during the whole time was not done in the exercise of the right thus conveyed.

The acquiescence of the defendant or his grantors for any length of time in the use of a particular pathway is, under the circumstances, of no significance; for the moment the deed comes in, that instrument explains, limits, and controls the effect of such acquiescence. It shows conclusively that the acquiescence of the defendant and his grantors was the exercise of the right conveyed by the deed ; and that was nothing more, at the outside, than the right to a convenient passage-way from some undefined point on Chapel street to the back of the store.

There is nothing in the case to show that until the defendant had occasion to use some part of the vacant land in the rear of his store it made any difference to him where the travel passed. It therefore does not appear that there was any call whatever upon him to interfere, or even to object to the use of one part of the lot more than another ; hence, as before remarked, his silence has no significance, and no tendency to show an agreement on his part that the way should be located in one place rather than another.

We are therefore of opinion that the court did not err in ruling that, upon the evidence, the plaintiff was not entitled to a way fixed on any particular line from Chapel street to the place where the back door of the store on number six was in 1833, and that the evidence did not entitle the plaintiff to recover for obstruction of a way, if the way left by the defendant in the rear of his store was such as was reasonably suitable, convenient, sufficient, and necessary for the purposes for which the right of passage was granted. The jury found this fact to be so, and there must be judgment on the verdict.

We think the defendant should be allowed costs on the issues found for him. *Meacham* v. *Jones,* 10 N. H. 126.