Merrimack, }
June, 1894. }

WHITE & a. v. EAGLE AND PHENIX HOTEL Co.

If from the language used and other competent evidence, it is the fair construction of a deed conveying land and the right to use adjacent passways that a continuous way was intended, the grantee may, by filling the lower parts of the way, make continuous passage possible, although adjacent land of the grantor is damaged thereby.

BILL IN EQUITY, praying for the removal of an obstruction from a passway. Facts agreed.

November 1, 1889, Mrs. White, one of the plaintiffs, conveyed to the defendants the Eagle Hotel, bounded as follows: "Beginning at a point in the easterly line of North Main. street . . . from which starts the northerly line of the passway . . . between the premises hereby conveyed and Exchange block . . . thence running easterly on the northern line of said passway 79.98 feet . . . thence in a straight line 101.3 feet to the southeasterly corner of the large chimney on said granted premises; thence northerly in a line that with the last described line forms an angle of one hundred and twenty degrees, 50.82 feet by a passway twelve feet in width; thence westerly in a line that with the last described line forms an angle of ninety degrees and twelve minutes, 159.97 feet by a passway varying in width from 12.3 feet at its easterly end, to 10.7 feet at its westerly end, to said easterly line of North Main street; thence southerly on said easterly line of North Main street 113.15 feet to the point of beginning,— together with the right to use in common with the grantor, her heirs and assigns and the other owners therein, the passway between said granted premises and Exchange block, and a passway twelve feet in width extending therefrom and bounding said granted premises upon the second and third lines thereof as above described, and a passway bounding said premises on the north and extending from the easterly line of the last mentioned passway (extended in a northerly direction) to North Main street, and being 12.3 feet wide at the easterly end, and 10.7 feet wide at the westerly end,— said passways to be used on foot and with all kinds of teams and vehicles."

At the time of the conveyance, Mrs. White owned in fee the land conveyed, the land over which the passways were granted, adjoining land on the southeast and east, and also on the north to a point about eighty-five feet from the street, all of which she occupied by herself or tenants, the part conveyed as a hotel, and the rest as a stable called the Eagle stable. Access to the stable was had for the most part by the passway between the hotel and

Exchange block. A stable door and several windows opened into the north passway. It extended beyond the granted premises some fifty feet, and into this extension opened other stable doors and windows. The north passway was used by Mrs. White and her tenants. It afforded the only access to two doors in the rear part of the hotel occasionally used as a means of access to the stable. It descended from the street until, at a point twelve feet west from the easterly line of the hotel as conveyed, it reached a level twelve feet below the level of the passway on the east. From this point easterly it was covered with plank and concrete on a level with the east passway. In other words, the north passway for the distance of twenty-four feet from its easterly end (being the covered part) was on a level twelve feet below the east passway, and there was no connection between them or means of passage from one to the other.

In 1890, the defendants built a stone wall eight feet high across the north passway at a point twenty feet west of their easterly line (thirty-two feet west of the easterly line of the east passway), extended the planking and concrete to the top of the wall, and built up the part of the passway immediately west of the wall with earth, thereby making the passway continuous around the hotel, and also making that part of the stable east of the wall and one of the doors in the rear part of the hotel inaccessible from the north passway. The wall and filling in of earth covered three windows looking into the passway, and constitute the obstruction complained of. In May, 1891, Mrs. White conveyed the stable to the other plaintiffs.

*Leach & Stevens*, for the plaintiffs. The question involved is the construction of that clause in the deed conveying a passway on the north of the premises conveyed. The solution is to be reached by ascertaining the intention of the parties and especially the grantors. *Swain* v. *Saltmarsh*, 54 N. H. 9. The benefit to one party or injury to the other of a particular construction may be of decisive weight in determining whether it was intended. *Gardner* v. *Webster*, 64 N. H. 520.

The passway for which the plaintiffs contend had been in actual use for that purpose for years unless partially and temporarily obstructed, as the defendants claim, by ashes. It follows the natural surface of the ground, and so far as appears, has accommodated the occupants of the property conveyed, as well as the occupants of the grantor's other property, since the erection of the buildings. To make it accessible requires only the removal of an accumulation of ashes; while to make the passway the defendants contend for, it is necessary to construct the easterly half of it new, where never used before, twelve feet in the air, with a plank foundation sure to result in speedy decay and to be

maintained with great expense, and the removal of the carriage shed.

The passway claimed by the plaintiffs is the one presumably always used in connection with the hotel, and in use so far as any could be used at the time of the conveyance. The presumption is strong that the parties intended and had in mind a passway that had been in use, rather than one that so far as is shown had never been thought of. Deeds are to be construed with reference to the actual rightful state of the property at the time of execution. *Bell* v. *Woodward*, 46 N. H. 315; *Richardson* v. *Palmer*, 38 N. H. 212; *Dunklee* v. *Railroad*, 24 N. H. 489.

The passway claimed by the plaintiffs follows the natural surface of the ground and is a natural one, while that for which the defendants contend is in the air and artificial. The natural language used where the parties intend an artificial passway, not then in existence, would give the idea that it was something to be made or built, or the right to construct such a passway, rather than the grant of something already in existence or that had been already used for that purpose. Passways granted may well be presumed to be on the earth rather than in the air, and of natural rather than artificial construction. The absence of any provision in the deed for the cost of construction or maintaining the passway is an argument against the passway the defendants contend for. Its foundation is of plank which must speedily decay and be attended with danger of breaking through unless carefully looked after.

The plaintiffs' passway accommodates the granted premises as then constructed for all purposes required so far as appears by the case, while the defendants' passway would not. It accommodates the easternmost door in the property conveyed, and is on the same level with it, while the defendants' obstructs and makes it useless, and, if the filling were continued, would also partially obstruct the other door. These doors were outside doors, and were taken out after the conveyance when the hotel was remodeled. They were used in connection with the passway on the north before the conveyance. The grantor cannot be presumed to have intended that the grantee desired a passway that would partially, if not wholly, interfere with their use. No other occasion is shown for a passway on the north for the defendants' accommodation, for the property as it then existed. The plaintiffs cannot be presumed to have foreseen what changes the defendants would desire to make, and there is no evidence that the defendants had decided on any changes at the time of the conveyance.

The injury to the plaintiffs' remaining property and inconvenience to tenants make it improbable that they intended the passway contended for by the defendants. It would make the large

stable doors east of the wall substantially useless; it covers three windows with earth; it shuts out all air and light from the small windows in the stable opening on this passway; it renders useless the remainder of the passway, or substantially so; it closes this avenue for escape of horses in case of fire; and, in fact, renders the passway of no use to the grantor except to drive from Main street to her stable on the same level with the other passway, which affords all the access to it that is required. The grant of these passways was of a right to use them in common with the grantor, her heirs and assigns. The passway claimed by the defendants deprives the plaintiffs of any beneficial use of the passway to reach the floor of the stable where a large number of horses are kept, and of all use except what is amply provided for by the passway on the east and south of the granted premises.

The fact that the deed conveys the passway on the north as a separate passway from the one on the south and east, instead of conveying it as a single passway around the premises, favors the plaintiffs' construction. As construed by the defendants, it makes one continuous passway around the premises. As described in the deed, two separate passways are conveyed.

The omission in the deed of any phrase or expression showing these two passways were to connect, favors our construction. Instead of such an expression, the passway on the north is extended from the easterly line of the passway bounding the premises on the. easterly side to the street. The word line as used in a boundary of land must be construed to extend above and below the surface of the earth. It is the place where adjacent lands belonging to different owners unite, whether above or below or on the surface. If the intention had been to have these passways connect, the parties would have naturally so stated, instead of leaving the description to imply separate passways.

The provision that the passways are to be used with all kinds of teams and vehicles and on foot, applies equally to either construction. The use of the plural, passways, shows they were in mind as separate rather than continuous. This clause is to be construed in connection with the use heretofore made of them, and for the grantor's convenience as well as the grantee's. The passway as then existing on the north, had a use for the grantee and grantor, and as now constructed it has none for the grantor, but is a substantial injury.

*Samuel C. Eastman*, for the defendants.

CARPENTER, J. If the plaintiffs have an adequate remedy at law, the objection is not taken and is not considered. The ques-

tion whether under the grant the defendants have a right to a continuous way around the hotel, is a question depending upon the intention of the parties, to be found upon a consideration of the language of the deed and other competent evidence. As tending to show what the parties meant by the words they used, the relative situation of the hotel and stable, the use made of them, the benefit of a continuous passway to the defendants and the injury caused by it to the plaintiffs, the ease or difficulty of making the connection and the ability or inability of the defendants to make a beneficial use of the entire property granted without the connection, may, among other things, be considered. *Gardner* v. *Webster*, 64 N. H. 520.

The grantee of a defined way has the right to do whatever is necessary to make it passable or usable for the purposes named in the grant. *Senhouse* v. *Christian*, 1 T. R. 560, 570. He may bridge or fill an impassable ditch across which it extends. Whether the ditch must be bridged or filled may depend upon the relative convenience or inconvenience to the parties of one or the other method. *Bean* v. *Coleman*, 44 N. H. 539; *Garland* v. *Furber*, 47 N. H. 301. If at the date of the deed Mrs. White's stable or other building had extended over the passway, the defendants would have had the right to remove so much of it as was necessary to make the way passable " on foot and with all kinds of teams and vehicles." In this respect there is no distinction between an obstruction caused by a building and one caused by a difference of level or other obstacle.

A stranger reading the deed would never suspect that the ways described would not permit a continuous and uninterrupted passage around the hotel. He could learn only by inspection or other extrinsic information that the level of the east way was twelve feet above that of the north way at the point of their junction. The natural meaning of the language of the deed is inconsistent with the existence of an impassable gulf across the way. It would deceive a grantee ignorant of the lay of the land, and defraud him if the gulf could not be bridged or otherwise made passable. The parties knew the situation. If their intention was that the obstruction should be permanent and irremovable, they naturally would, as they easily might, have expressed such intention. It cannot reasonably be supposed that they would select words apt to describe a continuous and uninterrupted way of passage around the hotel, without mention of or allusion to the then existing impassable barrier, if they understood such passage was to be forever impossible.

The parties might have limited the grant of the north passway by the easterly line of the premises conveyed. Had they done so, the present question would not arise. It would be certain that they did not intend a continuous passway. But by the ex-

press terms of the grant, the north way extends to the easterly line (protracted northerly) of the east way. The only apparent purpose of this extension beyond the hotel was to make the two passways coterminous and continuous. So far as appears, the defendants can make no beneficial use of the part of the north passway about twelve feet square, expressly granted and situated east of the east line of the premises conveyed, unless it is in some manner connected with and made passable to and from the east passway. Under the express grant of this part of the way the defendants took by implication whatever rights were reasonably necessary to enable them to enjoy it beneficially. *Leonard* v. *Leonard,* 7 Allen 277, 283. The law conclusively presumes it to be the intention of the parties that the grantee shall enjoy beneficially the subject of the grant. Upon this presumption is founded the doctrine that "the grant of a principal thing carries all things necessary to the use and enjoyment of the thing granted which the grantor had power to convey." *Tourtellot* v. *Phelps,* 4 Gray 370, 378.

The defendants are entitled to a reasonably convenient connection of the passways, to be made in such a manner as to subject the plaintiffs to no unnecessary inconvenience. In respect to the method of making the connection, the question is similar to that which arises in the case of a grant of an undefined way, as, for example, the right to pass and repass across the grantor's farm. If the parties cannot agree, equity determines the location of the way. *Gardner* v. *Webster,* 64 N. H. 520, 522, 523. In the present case the plaintiffs do not claim that the ways can be made continuous in a manner less injurious or more satisfactory to them than that adopted by the defendants.

*Bill dismissed.*

All concurred.