Rockingham,
Feb. 4, 1947. } No. 3619.

WILLARD C. MADDOCK & a. v. ETHEL M. CHASE.

*Chretien & Craig* and *James A. Manning* (*Mr. Manning* orally), for the plaintiffs.

*William H. Sleeper* and *Noel D. E. Bromley* (*Mr. Bromley* orally), for the defendant.

BURQUE, J. Plaintiffs own in fee simple two rooms on the second floor of a building the rest of which is owned by the defendant. Above plaintiffs' rooms is an attic covered by a pitched roof. The roof has become in a state of disrepair to the extent that it collects snow, ice and water which drips down through the attic and damages plaintiffs' rooms. The question submitted is whether plaintiffs can compel the defendant to repair the roof so that no damage will be caused to plaintiffs.

Nothing is said in either deed as to whose duty it will be to repair the roof, and no evidence is submitted to show whether there was any agreement on the subject. Plaintiffs acquired their title from the Arlington Mills June 8, 1931. The reference in the deed for prior title is to a deed of one Spates dated September 29, 1920. Defendant acquired her title January 26, 1934, from one Hayes who refers to a deed of one Ross to Thomas Hayes, defendant's husband, April 4, 1921. She inherited the property through her husband's will. It does not appear for how long a time both properties had been conveyed as they were in these two deeds, nor how they were treated between the respective owners as far as keeping them in a proper state of repair, if such was ever done. Nor do we know what condition the roof was in when plaintiffs came into possession. We therefore are unable to determine whether plaintiffs have acquired a right by usage, custom or understanding to have the roof kept in good condition by the defendant. We are thrown back on the sole proposition, whether plaintiffs are entitled by law in view of the bare grants, to have the defendant maintain the roof in such condition as to permit plaintiffs to enjoy peaceful possession and enjoyment of the two rooms without any injury or damage to them and to their property due to the failure of the defendant to repair the roof.

The situation created by these deeds is analogous to an easement. Treatises and cases on the law of easements control. 17 Am. Jur. s. 108, *p.* 1003, under the general title of Easements, Maintenance & Repairs, states the law as follows: "As a general rule in the absence of an agreement, the owner of land subject to an easement of a nature which required the maintenance of means for its enjoyment is not

bound to keep such means in repair or to sustain any expense in maintaining them in a proper condition. Although there is some authority to the contrary, as a general rule, the owner of a lower story of a building is under no obligation to keep its walls in repair so as to furnish support for the upper portion, which is owned by another person." Text writers seem to agree on this proposition. Washburn's Easements & Servitudes, s. 5, p. 639, first said: "The common law seems to be singularly deficient in definite rules in respect to the rights and obligations of the several owners, as to the extent and mode of using the parts of one tenement for the benefit of another, or how far the owner of either part is bound to repair the same, or to contribute to the repairs of other parts." Later in his work on Real Property Sixth Edition, Vol. 2, s. 1302, he says: "Somewhat analogous to easements in party-walls is that which the owner of the lower half of a dwelling-house may acquire to have his part protected by the roof over the upper part. The upper part, in such a case, becomes servient to the lower; but the owner of the latter cannot compel the owner of the roof to repair it, unless he has gained such right by usage or grant." 3 Kerr on Real Property, s. 2227, says: "In such cases neither owner can do any affirmative act upon his own premises which will result in damages to the other. Yet neither is under obligation to repair his portion for the protection of the other." Jones on Easements, s. 601, p. 489: "There is no implied obligation between owners of distinct parts of a building which will enable either to maintain an action against the other for mere refusal and neglect to repair his tenement, whereby the plaintiff's is injured." The above authors refer to all or some of the following cases: *Loring* v. *Bacon*, 4 Mass. 574; *Cheeseborough* v. *Green*, 10 Conn. 318; *Ottumwa Lodge* v. *Lewis*, 34 Iowa 67, which seem to be selected as the leading cases. Other cases cited are *Jackson* v. *Bruns*, 129 Iowa 616; *Pierce* v. *Dyer*, 109 Mass. 374; *Bartlett* v. *Peaslee*, 20 N. H. 547; *Wiggin* v. *Wiggin*, 43 N. H. 561; *Cole* v. *Company*, 79 N. H. 187.

*Loring* v. *Bacon*, 4 Mass. 574, is a case where the owner of the fee of the lower floor and cellar of a dwelling house was requested by the owner in fee of the rest of the building to join with the latter in making repairs upon the roof; but he refused and the owner of the upper tenement made the necessary repairs and brought an action to compel the owner of the lower portion to contribute to the cost of such repairs. In denying liability on the part of the lower owner, the court said: (p. 575) "Although, in the case, the parties consider themselves as severally seised of different parts of one dwelling-

house, yet, in legal contemplation, each of the parties has a distinct dwelling-house adjoining together, the one being situated over the other. The lower room and the cellar are the dwelling-house of the defendant; the chamber, roof, and other parts of the edifice, are the plaintiff's dwelling-house. And, in this action it appears that, having repaired his own house he calls upon her to contribute to the expense, because his house is so situated that she derives a benefit from his repairs, and would have suffered a damage if he had not repaired. Upon a very full research into the principles and maxims of the common law, we cannot find that any remedy is provided for the plaintiff." A similar pronouncement in almost identical language is found in the *Wiggin* case where a tenant for life was seized of certain rooms and chambers above, and the roof had become leaky and in need of repair. It was held that the residuary legatee could not recover of the life tenant her share of the expense incurred in repairing that part of the building occupied by the life tenant.

In *Jackson* v. *Bruns, supra*, it is held that the owner of the lower portion of a building is under no obligation to keep its walls in repair so as to furnish support for the upper portion which is owned by another person. This was a bill in equity seeking to compel the defendant to repair a defective wall in a building of which defendant owned the first story and the plaintiff owned the second. The court dismissed the petition.

To the same effect is *Pierce* v. *Dyer, supra*. In *Cheeseborough* v. *Green, supra*, it is held that the owner of the lower part of a house cannot maintain an action on the case against the owner of the upper part, for suffering the roof to become leaky and ruinous, whereby goods in the lower part are damaged. And in *Ottumwa Lodge* v. *Lewis, supra*, it is held that the owner of the upper part of a house cannot maintain an action at law against the owner of the lower part, to recover contribution for repairs made on the roof.

The facts in the two following cases differ from those in the above cases, but the principle of law is analogous, and is some authority for the result reached here. *Cole* v. *Pierce Co., supra*, involves a dam owned in common. At *p.* 188 it is said: "It is true, as the plaintiffs contend, that their deed gives them the right to draw water from the stream by means of the dam, but it does not follow that the defendant is bound to keep the dam in repair for their benefit, for the deed is silent as to who shall maintain the dam, and there is no rule of law written or unwritten which imposes the duty on the defendant for repairing the dam for the benefit of the plaintiffs. In other words,

notwithstanding the plaintiffs' deed gives them the right to use the dam to draw water from the stream for the use of their mill, neither the deed nor the law imposes the duty of keeping the dam in repair on either of the parties for the benefit of the other." In *Bartlett* v. *Peaslee, supra,* the plaintiff acquired by deed from defendant's predecessor the right to grind in corn-mill then owned by the latter and by him deeded to the defendant. The provision in the deed reads: "Also a privilege for the said Jonathan Bartlett to grind all his own corn in the above mentioned corn-mill." Plaintiff enjoyed this right from the time of transfer in 1822 until the year 1841 since which time the mill became in disuse and was removed by the defendant in 1945. *Held:* The grantee of a right to grind at a corn-mill cannot maintain case against one claiming the mill, under the grantor, for not keeping it in repair.

All the above, with the exception of *Jackson* v. *Bruns, supra,* were either brought in assumpsit or case. The *Jackson* case is one where a proceeding in equity was brought to compel defendant to repair a defective wall in a building and it is there held that the owner of the second story of a building, in the absence of a contract, has no equitable right to compel the owner of the first story to repair his foundation and walls for the purpose of furnishing support for the second story, where the defective condition was the result of the natural deterioration due to the elements, and not to the fault of the owner.

The *Cheeseborough* case says that case would not lie, but that the plaintiff's remedy must be sought in chancery. It does not, however, state that such a remedy does exist, and if it does, what it is. *Jackson* v. *Bruns,* 129 Iowa 616, 622, states that "the action which plaintiff seeks to maintain in this case is wholly without precedents, either at law or in equity, and we think that the facts of the case show that such an action ought not to be maintained."

The reason why these owners of dominant estates cannot recover damages, reimbursement, or contribution, for expenses incurred by the dominant owners for repairs which they claim the servient owner should have incurred is because there is no duty or obligation on the part of the latter to make the repairs. There being no legal duty or obligation to make repairs, there is nothing equity can enforce.

The doctrine of implied understanding and reasonable use of premises relied upon by the plaintiffs does not apply in this case. Cases cited in support thereof are therefore inapplicable here. In the absence of an express agreement or right acquired by usage, the first question must be answered in the negative.

Likewise of the second question. Plaintiffs in their brief state that originally the main house and the ell belonged to one owner. Assuming that is so, it does not follow, as claimed by the plaintiffs, that when the ell was conveyed it is reasonable to infer that the parties had in mind that the joint between the two properties would have to be repaired and that it would be a joint duty on the part of both owners to repair it. Just because the maintenance and repair of the joint would be for the mutual benefit of both owners, it does not follow that there is a mutual duty and obligation to repair. *Bean* v. *Dow*, 84 N. H. 464, cited by the plaintiffs does not support the claim. The law hereinabove propounded applies equally in the consideration of this second situation. In the absence of agreement between the parties, the answer to the second question is that there is no duty to repair on the part of either party or both.

*Case discharged.*

All concurred.