REID ET AL. *v.* WASHINGTON GAS LIGHT
COMPANY

[No. 67, September Term, 1963.]

*Decided November 5, 1963.*

The cause was argued before BRUNE, C. J., and HAMMOND, HORNEY, MARBURY and SYBERT, JJ.

*Robert W. Beall* for the appellants.

Submitted on brief by *J. Hodge Smith* for the appellee.

MARBURY, J., delivered the opinion of the Court.

By their amended bill of complaint filed in the Circuit Court for Montgomery County the appellants sought a mandatory injunction ordering the removal of a sixteen inch gas pipe line from their property. This appeal is from an order of court denying appellants' motion for summary judgment and granting a similar motion by the appellee. The sole question below and in this Court is whether under the terms of the grant of ease-

ment involved the appellee had the legal right to substitute a sixteen inch gas pipe line for the twelve inch pipe originally laid. The case was presented to us on an agreed statement of facts which may be summarized as follows. Appellants purchased about seventeen acres of land in Montgomery County in March of 1954, which was subject to a right-of-way dated October 7, 1930 and properly recorded, in favor of the Maryland Gas Transmission Corporation, whose successor in interest is the appellee, Washington Gas Light Company.

Soon after the grant of this easement a twelve inch (inside diameter) steel gas transmission line was placed across the property at a depth of about three feet. This pipeline remained in place until late 1957 or early 1958 when the appellee went upon the servient land, removed the twelve inch gas pipe, and replaced it with a steel sixteen inch (inside diameter) pipe. No written notice was given of this intended action by the gas company, although one of the owners was notified orally. The pipeline transverses the industrially zoned land of the appellants for a distance of about 585 feet.

On April 2, 1958, the appellants' attorney, who was also one of the owners of the property as a tenant in common, wrote the president of the gas company complaining of the company's action. The letter was acknowledged on April 4, 1958, and a meeting was held shortly thereafter to discuss the complaint. However nothing constructive seems to have come of this and no further discussions were had until 1962. The sixteen inch pipe has meanwhile remained in place since its installation.

Washington Gas Light Company in 1957 was notified by the Maryland State Roads Commission that Viers Mill Road in Montgomery County was to be widened and improved, and that its gas transmission line originating in Rockville would have to be relocated as a part of the road improvement program. It was at this time that the company decided to replace the entire line leading to the gas storage plant in Rockville, a part of which crossed the land of the appellants. The removal and replacement of the pipeline was accomplished by excavating a trench to the then existing twelve inch line, cutting it into sections and removing it. The sixteen inch pipe was then installed in the identical location and the trench was backfilled

and compacted. It was agreed that under normal pressure and flow conditions the sixteen inch pipeline will deliver approximately seventy-five per cent more gas than the twelve inch line.

The pertinent parts of the grant of easement are as follows:

"For and in consideration of the sum of Thirty eight Dollars * * * [the then owners] grant unto MARYLAND GAS TRANSMISSION CORPORATION, its successors and assigns * * * *the right to lay, maintain, operate and remove a pipe line* for the transmission of gas * * * through the lands of the Grantor in Fourth Election District, Montgomery County * * *. (Emphasis supplied).

* * *

"The Grantee is further granted the right, at any time or times within ten (10) years from the date hereof, to lay one or more additional lines of pipe alongside of the first line herein provided, upon the payment of the price above mentioned for each additional line to be laid, and to maintain, operate and remove the same, subject to the same provisions.

"Where necessary or convenient the Grantee may haul over the above described lands pipe and material as may be needed in the construction or maintenance of the line or lines on adjoining lands.

"It is agreed that the gas line or lines to be laid under this grant shall be constructed and maintained below cultivation, so that the Grantor may fully use and enjoy the premises, subject to the rights of the Grantee to maintain and operate said line or lines.

"The Grantee further agrees to pay for any damages that may arise from the maintenance, operation or removal of said line or lines."

Appellants concede that the right to replace a worn out pipe is within the ambit of "maintenance", but they say that the size of the pipe can not be increased without the consent of the property owners.

This Court has for a good many years adhered to the gen-

erally accepted rule that since an easement is a restriction upon the rights of the servient property owner, no alteration can be made by the owner of the dominant estate which would increase such restriction except by mutual consent of both parties. *W. Arlington L. Co. v. Flannery*, 115 Md. 274, 279, 80 Atl. 965. The test to determine the right to make a particular alteration appears to be whether the change is so substantial as to result in the creation and substitution of a different servitude from that which previously existed. 17A Am. Jur., *Easements*, § 134. In other words, if the alteration is merely one of quality and not substance there will be no resulting surcharge to the servient estate.

Accordingly we are called upon to construe the grant in the light of settled rules of construction to determine first, if the appellee had the right under the terms of the easement to substitute the sixteen inch pipe, and second, if it had this right, did the exercise of the right place a substantially increased burden on the servient estate. Of course, the scope of the easement is to be determined from the language of the grant and any doubtful language must be resolved in favor of the grantee.

Each side relies primarily on a single, but different case. Appellants, who contend that the replacement of the pipe line was not within the scope of the easement, urge us to follow the early New York case of *Onthank v. L. S. and M.S.R.R. Co.*, 71 N. Y. 194 (1877). In that case the size of the water pipe involved was doubled and directly resulted in depriving the owner of the servient estate of an adequate water supply. With language in the grant very similar to that in this case, the court held that the larger pipe was not contemplated. Implicit in the holding is the obvious substantial burden placed upon the servient land owner by depriving him of adequate water.

Appellee, on the other hand, contends that the replacement was contemplated and further, there was no additional burden placed upon the servient estate. It urges that our decision in *Tong v. Feldman*, 152 Md. 398, 136 Atl. 822 is controlling. There we found that the lessee of a second floor dominant tenement had an easement by implication to use a gas pipe line and a gas meter in the servient tenement consisting of the first floor

and cellar. We further found that this easement could be enlarged by substituting a larger pipe and meter where necessary for the full enjoyment of the easement, so long as there was no interference with the reasonable enjoyment of the property by the servient owner. We expressly recognized, citing illustrative cases, that there might be increases in the volume and kind of use. *Id.,* 403-404. Of course, in the case at bar we are limited to the language the parties used in the express grant, and are not concerned with an implied easement as in *Tong.*

We think that the language used in the grant involved in this case demonstrates that the parties contemplated a future need for modifications of the original line. The appellants argue that the option to lay additional pipes showed that any expansion of facilities had to be done within ten years, and upon the payment of an additional charge. They urge that to allow this sixteen inch pipeline to remain would be to allow appellee to do indirectly what it could not do directly. We do not construe the instrument so narrowly.

To have exercised the option clause the company would have had to dig one or more additional trenches. A larger surface area of the property would come within the dominant tenement for purposes of maintenance and operation of the gas line. Additional pipelines would clearly add to the existing burden on the servient tenement. The result would be less area to which the appellants could have free and full use of their property. We think it is this contingency the original parties contemplated when they inserted the option clause in the right-of-way agreement.

On the other hand, the mere replacement of the existing pipe with a larger one in the same line did not entail more trenches. The company simply replaced a particular size pipe in the same existing *pipeline.* The expiration of the option meant that no more land could be burdened with additional lines in the absence of further negotiations and payment therefor. In this instance we are not faced with a *relocation* of the right-of-way as in *Millson v. Laughlin,* 217 Md. 576, 142 A. 2d 810; *Sibbel v. Fitch,* 182 Md. 323, 34 A. 2d 773; *Greenwalt v. McCardell,* 178 Md. 132, 12 A. 2d 522; *Stevens v. Powell,* 152 Md. 604, 137 Atl. 312 but here, as in *Tong, supra,* there

is involved merely an alteration of the *instrumentality* of the easement, which we think was within the contemplation of the parties to the agreement.

Since we think some alteration of the instrumentality of the easement was permissible, it only remains for us to determine whether the court below was clearly erroneous in finding "that there has been no unreasonable interference or additional material burden placed upon the servient estate by the installation of the 16-inch pipe." Maryland Rule 886 a.

From the affidavits submitted by the parties in support of their motions for summary judgment, and from the interrogatories and answers thereto, the facts which bear on the increased burden show that the new pipe delivered approximately seventy-five per cent more gas. The appellants argue that this increases the burden, specifically, creating a safety hazard curtailing future development of their property. On the other hand, the company stresses that the seventy-five per cent increase is based upon normal pressure and flow conditions in a stronger, modern, welded steel pipe, thereby increasing efficiency with no resulting decrease in safety.

The answers to interrogatories further point to the fact that the new pipe has a protective coating of felt and pipeline enamel which the twelve inch pipe did not have. In addition, the pipe was laid in the same exact location, no additional trench was necessary, and certainly it can not seriously be contended that the extra four inches of space in the ground the new pipe occupies is a substantial burden on the servient estate. It would be a different situation if the trench were much larger or if the pipe were sufficiently close to the surface to adversely affect its use by the servient property owners.

We think the chancellor was justified in finding, as she did, that there was no substantial increase in burden upon the servient estate.

*Order affirmed, with costs to appellee.*