Strafford,
No. 5636.

WILLIAM E. GERRISH & a.

*v.*

WISHBONE FARM & a.

Argued June 7, 1967.
Decided July 18, 1967.

*Burns, Bryant, Hinchey & Nadeau* and *Robert P. Shea* ( *Mr. Shea* orally ), for the plaintiffs.

*Sulloway, Hollis, Godfrey & Soden, Martin L. Gross* and *Dupont, Pavetti & Dupont* ·( of Connecticut ) ( *Mr. Gross* and *Mr. Ralph P. Dupont* orally ), for the defendants.

GRIFFITH, J. The Wishbone Farm is located on both sides of Governor's Road in Rochester at or near the boundary between Rochester and Farmington. Homer Blake and Mary Blake are husband and wife and own a home and real estate situate in

Farmington and a little less than a quarter of a mile north of Wishbone Farm on Governor's Road. The Gerrish home is about a half-mile south of Wishbone Farm on Governor's Road. The land owned by Wishbone Farm abuts land of the Blakes on the north and west and land of Gerrish on the west and south. The Gerrish farm has been in the Gerrish family for a long period of time. The Blakes obtained title to their property some years ago with the intention of occupying the house as a retirement home upon their retirement from the armed services which event preceded the bringing of this action. The area involved is zoned for agriculture.

Wishbone Farm is engaged in the business of producing and processing eggs in large quantities for sale to various metropolitan areas. The chickens are housed in a series of buildings, all enclosed and containing a system for automatically removing the eggs for cleaning and removing the manure from the buildings. The droppings and waste from the chickens fall into a glass-lined pen to which water is added. The material then goes into cross gutters and flows into outside cement tanks. A tank truck is used to truck the liquid waste from the cement tanks to be emptied into open lagoons. These lagoons are open pits ranging from one hundred and fifty feet square to two hundred feet by one hundred and fifty feet and the depth ranges from five to nine feet. There are three lagoons situated on the west side of Governor's Road. The material undergoes a chemical change and emits odors. The lagoons remain uncovered at all times, and when filled to capacity other lagoons are to be built.

The first lagoon constructed in the late summer of 1962 was used until the spring of 1965 when the dike broke and waste material flowed onto the land of both plaintiffs. The matter of damages sustained by the plaintiffs from this break has been settled between the parties.

The buildings house 80,000 chickens, of which 63,000 or 64,000 are laying hens. Martin Blair is president and majority owner of Wishbone Farm of New Hampshire. He testified that the defendant, Wishbone Farm of New Hampshire, Inc., has an investment of six hundred thousand dollars in this enterprise.

The Court found in part: " . . . that on damp days or in foggy weather the odors from the Wishbone property are discernible at the Gerrish residence. It is more noticeable and offensive in the fields while haying is in progress or when wood

is being cut. It is found that in the summer time the odors from the open lagoons are ' odiferous ' and offensive, as they permeate the atmosphere around the Blake residence, so much so that the Blakes cannot engage in outside activities when the wind is toward their home . . .

" The Court finds on all the evidence, including what was seen on the view, that the petitionee, Wishbone Farm of N. H. Inc., is maintaining on its premises an accumulation of chicken manure in such a manner as to constitute a public and private nuisance.

" The Court finds that the petitionee, Wishbone Farm, is making an unreasonable use of its land in the manner in which it is disposing of the chicken manure involved in these proceedings. "

Based upon the Court's findings and rulings the defendant was enjoined from continuing their present method of chicken manure disposal after April 1, 1967.

The record supported any denial of either a nonsuit or a directed verdict. This Court may not substitute its judgment on facts for that of the Trial Judge whose decision, quite properly, is based upon many factors, including the view, which do not appear in the transferred record. *Powell* v. *Gagne*, 102 N. H. 256; *Hahn* v. *Hemenway*, 96 N. H. 214. In this case it should be noted that the record amply supports the Trial Court's finding that the defendants' operation of their poultry farm entitled the plaintiffs to relief. There was testimony from which the Court properly found that the defendants carried on their business in an unreasonable manner which threatened the plaintiffs with irreparable damage. It is not necessary for this court to review the finding that there was a public nuisance since such finding was not necessary to the decree. *Proulx* v. *Keene*, 102 N. H. 427; *Page* v. *Brooks*, 79 N. H. 70.

The defendant Wishbone argues that the injunctive relief granted the plaintiffs was not based upon a consideration of the relative hardship to the parties by the granting or denial of the injunction. They rest this argument on the testimony of Blair that the investment in the farm totaled six hundred thousand dollars and in the waste disposal system between one hundred and one hundred and twenty-five thousand dollars. Because its smell is expensive Wishbone argues in effect it should be allowed to continue its operation at the expense of the rights of its neighbors. As opposed to this argument, there was evidence that the defendants entered into an untried and experimental method of

manure disposal, which it now admits that its area is insufficient to support. Indeed, it would appear that, bearing in mind that the waste from its poultry is equivalent to the waste produced by eight thousand people, and that it has only four or five acres available for lagoons, it may not be long before the entire area is one waste lagoon. It appears that no real attempt has ever been made by the defendant to alleviate the odor.

The Court heard the evidence in this case on February 11, 1966, but delayed its decree until the end of that year and delayed the effective date of its decree until April 1, 1967. It was not until the defendant appeared in this court that, through counsel, it indicated that it is now prepared to make some attempt to alleviate the situation. The present case is entirely different from *Webb*. v. *Rye*, 108 N. H. 147, where the Trial Court refused to receive offered evidence of possible alternative remedies to the nuisance. There is no claim in this case that defendant ever offered any alternative to injunctive relief. To deny injunctive relief to the plaintiffs under these circumstances would give the defendant a right to maintain a nuisance by the fact of having established it. This court has twice denied this right to cities and towns whose exercise of statutory functions created nuisances. *Proulx* v. *Keene, supra*; *Webb* v. *Rye, supra.*

If the defendant now has a remedy there is nothing to prevent its complying with the Court's injunction. If the defendant requires time to test remedies, it may apply to the Trial Court by appropriate motion to secure such delay. It is not for this court to deal with such motion or evidence which may be addressed to the discretion of the Trial Court.

*Exceptions overruled.*

GRIMES, J., did not sit; the others concurred.