Grafton,
No. 6043.

ELSIE G. CROCKER

*v.*

THE COLLEGE OF ADVANCED SCIENCE d/b/a CANAAN COLLEGE.

July 20, 1970.

*Alexander J. Kalinski* ( by brief and orally ), for the plaintiff.

*Maynard, Dunn & Phillips* ( *Mr. Roger B. Phillips* orally ), for the defendant.

LAMPRON, J. Petition seeking a permanent injunction against defendant's alleged unreasonable use of a sewage easement upon plaintiff's land. Trial, with a view, before *Loughlin,* J. who made certain findings and rulings among which were the following: " The Court finds that the petitionee is making an unreasonable use of the land of the petitioner. Further, that the petitionee has offered no concrete alternative to injunctive relief. " In a decree dated June 11, 1969, the court enjoined the defendant from continuing its present use of plaintiff's land after June 11, 1970 and at that date to remove " all feculent and foul matter " from plaintiff's premises.

Defendant objected to the court's findings and order and also moved that the court ( 1 ) add a finding that because of the proximity of defendant's premises to the Canaan water supply it was refused a permit to build a septic system thereon and had no alternative means of sewage disposal except by use of plaintiff's land; ( 2 ) amend its decree by ordering plaintiff to permit defendant to enter upon her land and build an underground septic tank and also to amend its order of removal because the majority of the matter was deposited over the past 61 years without objection. The motion was denied and all questions of law raised were reserved and transferred to this court.

Plaintiff's father, her predecessor in title, owned property on the west side of Canaan Street Village in Canaan. It consisted of a residence, open fields and woodland. In 1908, he granted, by quitclaim deed, to defendant's predecessor in title to the premises on the east side of the street, an easement over grantor's premises to "construct and maintain a sewer not exceeding eight inches in diameter and discharge therefrom sewage . . . said sewer to be laid upon the following described line" which was specifically set out in the deed. "Said sewage shall be discharged on the surface of the land in said . . . pasture westerly of the fence dividing it from the field." The grantor had the privilege to discharge the sewage from his residence into this line but this is not now being done by this plaintiff.

In 1908 when the easement was granted, there were two buildings on defendant's premises, a main building built about 1831, and an annex. From 1908 to 1946, the main building was used primarily as a summer inn for two or three months of the year and could accommodate about 35 guests. In 1946 the premises were acquired by Cardigan Mountain School and the inn was used as a dormitory for about 24 boys. Later the annex was remodelled and toilet facilities constructed and tied into the sewer line. This provided housing accommodations for about 60 students. After plaintiff complained about this use of the sewer line, Cardigan moved to another location and stopped using these buildings as a dormitory.

Defendant purchased the property in 1960 and opened its school in 1961 housing about 44 full time students on the premises in question for 9 months of the year. The court found that since then the flow of sewage through plaintiff's land has increased to a very great extent and feculent and foul matters flow through in great quantities and accumulate on the surface of plaintiff's land. "In 1969 including students, faculty and other personnel, perhaps two hundred people were using facilities involving the sewage system. Complaints were made relative to odor from the sewage." "The Court had the benefit of a view on a nice, cool spring day . . . The Court considering the view as evidence . . . found the odor to be noisome and can well believe the evidence from witnesses that on a warm day the odor may well be unbearable. The sewage seeps for some distance through the wooded area of petitioner's premises."

The court also found that the odors emanating therefrom interfered with the peaceful enjoyment of plaintiff's residence and of

the premises of other residents on the street. A sanitary water analysis, dated April 22, 1969, made by a state agency, of a sample of "this fluvial" bubbling at the end of the sewer pipe on plaintiff's land was characterized thus: "Very heavy bacterial contamination indicative of sewage pollution." The president of the defendant college testified that he inspected plaintiff's premises on two occasions and agreed that the sewage discharge was "not a good situation" and "I would not welcome it."

The college president also testified that the school has a capacity of 185 students. It has 12 full time and 6 part time faculty members, an administrative staff of 11, and 25 other personnel with an overall budget of $500,000. Several options to solve the problem have been discussed with the plaintiff without success. A proposal to take the sewage beyond plaintiff's property would cost about $200,000 and a request to the selectmen for a study of the sewage problem in the town received a "complete negative. No interest" response. Defendant's counsel stated that the State will not permit the college to build a septic tank at its present location because of its proximity to the town water supply. The president testified that if the injunction were to be granted the college would close.

When an easement exists by an express grant, its use is determined by the terms of the grant considered in the light of surrounding circumstances. *Spaulding* v. *Clark*, 104 N.H. 30, 32, 177 A.2d 400, 401; 25 Am. Jur. 2d. Easements and Licenses *s.* 23. The owner of an easement cannot materially increase the burden of it upon the servient estate, nor impose a new or additional burden thereon. *Chevalier* v. *Tyler*, 118 Vt. 448, 111 A.2d 722; 25 Am. Jur. 2d Easements and Licenses *s.* 72. *See Reid* v. *Washington Gas Light Co.*, 232 Md. 545, 194 A.2d 636; *Marlatt* v. *Peoria Water Works Company*, 114 Ill. App. 2d 11, 252 N.E.2d. 403. "The test to determine the right to make a particular alteration is whether the alteration is so substantial as to result in the creation and substitution of a different servitude from that which previously existed." 25 Am. Jur. 2d Easements and Licenses *s.* 87; *Reid* v. *Washington Gas Light Co. supra. See French* v. *Marstin*, 24 N.H. 440, 449.

We hold that on the facts the trial court could properly find and rule that the easement granted in 1908 to the owner of a summer inn operated for about two months yearly with a capacity of 35 guests, to convey its sewage by an eight inch pipe and discharge it on the grantor's land is so materially increased when it is made to service buildings with about 200 users for approximately

nine months each year as to impose an unwarranted additional and new burden on the servient property of the plaintiff. Having thus properly found that defendant's method of sewage disposal was not within the terms of the easement, there was ample evidence to warrant the court's finding and ruling that defendant's use of plaintiff's land constituted a nuisance and that plaintiff was entitled to relief. *Webb* v. *Rye,* 108 N.H. 147, 153, 230 A.2d 223, 228; *Gerrish* v. *Wishbone Farm,* 108 N.H. 237, 239, 231 A.2d 622, 624.

The propriety of affording equitable relief in a particular case rests in the sound discretion of the trial court to be exercised according to the circumstances and exigencies of the case. The consequences of granting relief should be balanced against the need for it. *Gerrish* v. *Wishbone Farm supra.* However the mere fact that a wrongdoer may suffer will not of itself deter equity from granting relief to an injured party. 27 Am. Jur. 2d Equity *s.* 107.

On the facts the trial court could properly find that no real attempt has been made by the defendant to alleviate the situation and that no concrete evidence of a practical and workable solution to the problem has been offered. To paraphrase the language at page 239 of the *Wishbone Farm* case *supra,* defendant argues in effect that because removal of its smell will be expensive it should be allowed to continue it at the expense of the rights of its neighbors. If defendant now has an effective and economically feasible solution to the problem it can address itself to the trial court for relief. *Gerrish* v. *Wishbone Farm, supra* at 240.

Plaintiff argues that the easement granted to the defendant has been terminated by force of law and that the trial court erred in refusing to grant her requested findings and ruling to that effect. She points to the provisions of RSA 147:8 to substantiate her position. As related to this case this statute provides in part that no person shall occupy, lease or permit another person to occupy a building unless it is provided with suitable drains or sewers for conveying waste in some manner that will not be offensive. Section 11 provides that health officers can order discontinuance of a nuisance resulting from its violation. On the record before us we are unable to say that the trial court's denial of the requested findings and ruling pertaining to termination was erroneous.

Nor was it error for the trial court to deny defendant's motion requesting an amendment of its removal order. The trial court viewed the premises and could properly find and rule that the

offending substances on the premises were for the most part attributable to defendant.

The trial court properly refused to amend its decree by ordering plaintiff to permit defendant to enter upon her land and build an underground septic tank as this could be properly found and ruled to create a new and different easement than that which was granted. *Reid* v. *Washington Gas Light Co.,* 232 Md. 545, 194 A.2d 636.

*Exceptions overruled.*

All concurred.