Anthony MESITI

v.

MICRODOT, INC., d/b/a Microdot
Manufacturing, Inc. and Central
Screw Company.

Civ. No. 89–321–D.

United States District Court,
D. New Hampshire.

June 8, 1990.

Claudia C. Damon, Manchester, N.H., for plaintiff.

Maureen D. Smith, Concord, N.H., John C. Berghoff, Jr., Chicago, Ill., for defendant.

## ORDER

DEVINE, Chief Judge.

This Order addresses a motion seeking dismissal of Anthony Mesiti's action to recover costs related to removing hazardous waste from his Keene, New Hampshire, property. A brief summary of the relevant facts, drawn primarily from the complaint, follows.

In 1947 the Central Screw Company of Chicago, Illinois, began manufacturing

metal screws and fasteners in Keene, New Hampshire. Central Screw generated and disposed of hazardous, oil-containing substances at the site. In 1975 defendant Microdot, a Delaware corporation, purchased the assets and property of Central Screw. Microdot "continued to conduct the same manufacturing process [as Central Screw], with its attendant generating, disposal, and release of hazardous substances and of oil." Complaint at 8. In 1983 Microdot sold the property to Theodore W. Wiechers. On December 30, 1984, Wiechers sold the property to Anthony Mesiti.

Environmental investigations conducted in 1985 and 1986 revealed that the soil and water contained hazardous wastes, including cyanide and cadmium, that exceeded lawful concentrations. In 1987, pursuant to New Hampshire state law, plaintiff began removing the pollutants. In 1989 plaintiff filed this action against Microdot to recover damages for the cleanup expenses (approximately $430,000) and for costs related to the delay in selling the property ($95,000) caused by cleanup activities.

### DISCUSSION

Microdot makes various arguments to support its motion to dismiss. The Court addresses each argument below.

*1. Service of Process*

Microdot contends that this action should be dismissed because plaintiff failed to properly serve process. *See* Rule 12(b)(5), Fed.R.Civ.P. (dismissal for insufficiency of service of process). Rule 4(e), Fed.R. Civ.P., governs service on out-of-state defendants. It requires that service be made according to the method specified in a federal statute upon which plaintiff's claim is predicated, or, if no method is specified, service must be made in accordance with state law. *Omni Capital Int'l v. Rudolf Wolff & Co.*, 484 U.S. 97, 105, 108 S.Ct.

404, 410, 98 L.Ed.2d 415 (1987). Since the relevant federal statute, 42 U.S.C. § 9601, *et seq.*, specifies no method for serving process, service must comply with New Hampshire law.

Pertinent here are three New Hampshire "long-arm" statutes: New Hampshire Revised Statutes Annotated ("RSA") 510:4 II and 293–A:119 II and 121. *See* Appendix A. These statutes permit service of process on the secretary of state when it is alleged that a nonresident has committed a tort in New Hampshire.

■ Plaintiff originally served Microdot by mailing a copy of the summons and complaint to Microdot's Chicago address. Such service on a corporation residing without the geographical boundaries of this district is inadequate. *See Order re Mail Service*, No. M. 84–49, slip op. (D.N.H. Oct. 16, 1984).[1]

■ After Microdot moved to dismiss for improper service, plaintiff cured the defect by filing copies of the complaint, the amended complaint, and a summons with the New Hampshire Secretary of State. Gregory W. Swope's Affidavit of Compliance (Nov. 14, 1989). Since that method of service satisfies New Hampshire's long-arm statute and Rule 4(e), Fed.R.Civ.P., service was proper, and Microdot's arguments in this regard are rejected as moot.

*2. Personal Jurisdiction*

Due process requires that a court obtain jurisdiction over a defendant as a prerequisite to the maintenance of an action. *Kulko v. Superior Court of Cal.*, 436 U.S. 84, 91, 98 S.Ct. 1690, 1696, 56 L.Ed.2d 132 (1978). Microdot contends that this Court cannot assert jurisdiction over it because (1) it is not "doing business" in New Hampshire, and (2) it committed no tort in this state.

---

1. In the *Order re Mail Service,* this Court clarified its position that the "service by mail" provisions of Rule 4(c)(2)(C)(ii) do not authorize extraterritorial service on nonresident defendants. Although that rule permits service by first-class mail, this Court has ruled that it merely describes a permissible method of serving defendants subject to the court's jurisdiction. Rule 4(c)(2)(C)(ii) does not authorize service by mail on defendants without the geographic limits of this district.

**60**

New Hampshire law governs the question whether Microdot is amenable to the jurisdiction of this court, *see Bond Leather Co. v. Q.T. Shoe Mfg. Co.,* 764 F.2d 928, 931 (1st Cir.1985); *Hahn v. Vermont Law School,* 698 F.2d 48, 49 (1st Cir.1983), and the New Hampshire long-arm statute permits this Court to assert jurisdiction over foreign corporations, such as Microdot, if they are "doing business" in New Hampshire. RSA 293–A:121 provides in pertinent part, "If a foreign corporation ... commits a tort in whole or in part in New Hampshire, the acts shall be deemed to be doing business in New Hampshire by the foreign corporation." *See also Papafagos v. Fiat Auto, S.p.A.,* 568 F.Supp. 692, 693–94 (D.N.H.1983). Thus, if Microdot committed a tort in New Hampshire, it is considered to have been "doing business" in the state, and it is therefore subject to suit in this district.

In determining jurisdiction under a long-arm statute, "It is the law of this state that plaintiff's pleadings and all reasonable inferences that can be drawn from them are to be taken as true." *Dustin v. Cruise Craft, Inc.,* 487 F.Supp. 67, 70 (D.N.H.1980) (citing *Engineering Assoc. v. B & L Liquidating Corp.,* 115 N.H. 508, 511, 345 A.2d 900, 902 (1975)); *Leeper v. Leeper,* 114 N.H. 294, 297, 319 A.2d 626, 628 (1974)). In his amended complaint, plaintiff alleges that Microdot,

> as successor-in-interest to Central Screw Company, assumed and is responsible for all liabilities incurred by Central Screw Company for generating and disposing of materials containing hazardous substances which were released into the environment at the Site; ... as successor-in-interest to Central Screw Company, assumed and is responsible for all liabilities incurred by Central Screw Company for generating and disposing of materials containing oil which were released into

the environment at the Site. At all relevant times, Microdot and Central Screw Company were doing business in this district.

Microdot contends that it is not a successor-in-interest to Central Screw Company.[2]

Several courts have applied the rationale of successor liability to the problem of personal jurisdiction. *See, e.g., Goffe v. Blake,* 605 F.Supp. 1151, 1154 (D.Del.1985) (action and conduct of constituent corporation attributable to surviving corporation after merger for purposes of determining survivor's amenability to personal jurisdiction for liabilities of constituent). *See also Cole v. Caterpillar Machinery Corp.,* 562 F.Supp. 179 (M.D.La.1983) (although successor has no contacts with Louisiana, jurisdiction proper since claim arose against constituent corporation which had significant Louisiana contacts). And this Court, like the court in *Bowers v. NETI Technologies, Inc.,* 690 F.Supp. 349 (E.D.Pa.1988), is persuaded that unless *successor corporations are subject to personal jurisdiction in such actions,* "corporations will be encouraged to immunize themselves by fleeing the jurisdiction and formalistically changing their name." *Id.* at 361.

The Court finds that plaintiff has adequately demonstrated that Microdot may be responsible for a tort committed in this state; application of the New Hampshire long-arm statutes therefore permits this Court to exercise jurisdiction over Microdot.

Having met the requirements of the applicable state long-arm statute, the only remaining inquiry is whether plaintiff has shown that the "defendant's contacts with New Hampshire satisfy due process concerns mandated by the Fourteenth Amendment of the United States Constitution." *Kowalski v. Doherty,* 787 F.2d 7, 10 (1st Cir.1986).

---

**2.** In fact, in the asset purchase agreement between Microdot and Central Screw, it appears that Microdot did not assume any liability for the type of claim asserted here. *See* May 14, 1974, Asset Purchase Agreement, Article III, Assumption of Liabilities and Contracts (attached to Microdot's Memorandum of Laws in Support of the Motion to Dismiss). Microdot does concede, however, that its subsidiary, Central Acquiring Company, actually purchased Central Screw's Keene, New Hampshire, facility. Affidavit of Microdot Chief Financial Officer John S. Vanecho at ¶ 7 (attached to Microdot's Memorandum of Law in Support of Motion to Dismiss).

A state's power to exercise personal jurisdiction over non-resident defendants is limited by the Due Process Clause of the Fourteenth Amendment to the United States Constitution. *Helicopteros Nacionales De Colombia v. Hall*, 466 U.S. 408, 413–14, 104 S.Ct. 1868, 1871–72, 80 L.Ed.2d 404 (1984); *Pennoyer v. Neff*, 95 U.S. (5 Otto) 714, 24 L.Ed. 565 (1877). To assert jurisdiction over a foreign defendant, the court must be satisfied that defendant has "minimum contacts" with the forum state. *International Shoe Co. v. Washington*, 326 U.S. 310, 316, 66 S.Ct. 154, 158, 90 L.Ed. 95 (1945). The Supreme Court in *International Shoe* spotlighted the importance of distinguishing between "specific" jurisdiction and "general" jurisdiction as a source of determining whether minimum contacts exist between a defendant and the forum in order to establish personal jurisdiction. *Donatelli v. National Hockey League*, 893 F.2d 459 (1st Cir.1990) (citing *International Shoe Co. v. Washington*, 326 U.S. 310, 317–18, 66 S.Ct. 154, 158–59, 90 L.Ed. 95 (1945). "Specific" jurisdiction exists when "the cause of action arises out of or is related to the defendant's contacts with the forum state." *Glater v. Eli Lilly & Co.*, 744 F.2d 213, 215 (1st Cir.1984); *see also Ealing Corp., supra*, 790 F.2d at 983.

In the present case, the cause of action arises from the defendant's contacts within the forum, making this a case of "specific" jurisdiction. Defendant allegedly leaked hazardous waste onto a site in which it was manufacturing metal screws and fasteners. Plaintiff purchased this site from an individual who had purchased the site from defendant. Plaintiff sues Microdot as a former owner, alleging that it was defendant's manufacturing process which caused hazardous pollutants to be leaked. Since the cause of action arises out of defendant's contacts with New Hampshire, the minimum contacts test is satisfied and jurisdiction over defendant is proper if it "does not offend traditional notions of fair play and substantial justice." *International Shoe, supra*, 326 U.S. at 316, 66 S.Ct. at 158.

Here, defendant "purposefully avail[ed] itself of the privilege of conducting [business] activities" within New Hampshire, "thus invoking the benefits and protections of its laws." *Hanson v. Denckla*, 357 U.S. 235, 253, 78 S.Ct. 1228, 1240, 2 L.Ed.2d 1283 (1958). Moreover, defendant could reasonably anticipate being haled into court in New Hampshire since it previously maintained a manufacturing plant here. *Id.* at 253, 78 S.Ct. at 1239–40.

In addition, New Hampshire has a strong interest in seeing that its citizens find remedies for the damages caused by citizens of other states.

> "A state has an especial interest in exercising judicial jurisdiction over those who commit torts within its territory. This is because torts involve wrongful conduct which a state seeks to deter, and against which it attempts to afford protection, by providing that a tortfeasor shall be liable for damages which are the proximate result of his tort."

*Leeper v. Leeper*, 114 N.H. 294, 298, 319 A.2d 626, 629 (1974) (quoting Restatement (Second) of Conflict of Laws § 36, comment c (1971)).

The Court therefore rejects defendant's contention that it is not subject to jurisdiction here.

### 3. CERCLA

#### a. Contribution

Defendant attempts to limit its liability for the costs of removing hazardous waste by arguing that plaintiff is liable for a portion of the costs and that defendant cannot be compelled to pay the costs for which plaintiff is responsible. Thus, defendant argues that the CERCLA claim "for *all* response costs ... under a theory of joint and several liability should be dismissed." Memorandum of Law in Support of Defendant's Motion to Dismiss at 7.

When reviewing a Rule 12(b)(6) motion to dismiss, the Court's consideration is limited to the allegations contained in the complaint, *Litton Indus. v. Colon*, 587 F.2d 70, 74 (1st Cir.1978), and those allegations are to be "construed in the light most favorable to plaintiff and taken as admitted, with dismissal to be ordered only if the

plaintiff is not entitled to relief under any set of facts he could prove." *Chasan v. Village Dist. of Eastman,* 572 F.Supp. 578, 579 (D.N.H.1983) (and cases therein cited), *aff'd without opinion,* 745 F.2d 43 (1984); *see also Knight v. Mills,* 836 F.2d 659, 664 (1st Cir.1987). Plaintiff here asserts that Central Screw and Microdot discharged the hazardous waste which must be eliminated from his property. Assuming he can sustain that assertion, Central Screw and Microdot "fall[ ] neatly within that class of persons section 107(a)(2) was meant to reach—prior owners and operators." *Southland Corp. v. Ashland Oil, Inc.,* 696 F.Supp. 994, 999 (D.N.H.1989). Moreover, if plaintiff can show that he is an "innocent landowner" as recognized in 42 U.S.C. § 9607, defendant will be liable for *all* costs, as plaintiff contends. Defendant's first attempt to eliminate or narrow the CERCLA claims therefore fails.

### b. National Contingency Plan

■ To recover under the CERCLA statute, a private plaintiff must show that he has incurred response costs "consistent with the national contingency plan." 42 U.S.C. § 9607(a)(4)(B). Defendant argues that plaintiff's CERCLA claim must be dismissed because it fails to allege response costs consistent with such plan. The Federal Rules of Civil Procedure, however, do not require specificity in the pleadings. Rule 8(a), Fed.R.Civ.P.; *State of New York v. Shore Realty Corp.,* 648 F.Supp. 255, 262 (E.D.N.Y.1986); *see also Coon v. Grenier,* 867 F.2d 73, 76 (1st Cir.1989) (Federal Rules are to be liberally construed). The mere fact that plaintiff used the phrase "not inconsistent" instead of "consistent" in his complaint, Complaint ¶ 23, is not enough to warrant dismissal.

Whether or not plaintiff's response costs were consistent with the National Contingency Plan is not an issue for the Court to decide at this juncture. Although it is widely recognized that the "party seeking to recover its costs must bear the burden

of pleading and proving consistency with the National Contingency Plan," *Pinole Point Properties v. Bethlehem Steel Corp.,* 596 F.Supp. 283, 290 (N.D.Cal.1984); *see also United States v. Northeastern Pharmaceutical & Chem. Co.,* 579 F.Supp. 823, 850–51 (W.D.Mo.1984), the question of consistency is a factual determination and "cannot be made on the basis of the pleadings but must await development of a factual record." *Pinole Point, supra,* 596 F.Supp. at 290; *see also Tanglewood East Homeowners v. Charles–Thomas, Inc.,* 849 F.2d 1568, 1575 (5th Cir.1988); *Shore Realty, supra,* 648 F.Supp. at 263 n. 5; *City of Philadelphia v. Stepan Chem. Co.,* 544 F.Supp. 1135, 1144 (E.D.Pa.1982). Therefore, defendant's motion in this regard also fails.

### c. Petroleum, Consequential Damages, and Attorney's Fees

■ Defendant also contends that plaintiff may not recover costs for remediation of oil contamination, consequential damages,[3] or attorney's fees. Plaintiff makes no argument in opposition to these contentions.

Defendant's position with regard to each damage is sound. *See* 42 U.S.C. § 9601(14) (excluding costs of removing petroleum and crude oil from scope of CERCLA recovery); *Artesian Water Co. v. Government of New Castle County,* 851 F.2d 643, 648 (3d Cir.1988) (CERCLA only authorizes recovery of "response costs", not damages suffered as a consequence of the response); *Lutz v. Chromatex, Inc.,* 718 F.Supp. 413, 419 (M.D.Pa.1989) (CERCLA does not authorize recovery of relocation costs or costs incurred by loss of water wells); *Wehner v. Syntex Corp.,* 681 F.Supp. 651, 653 (N.D. Cal.1989) (reduced market value of home not recoverable under CERCLA); *T & E Indus., Inc. v. Safety Light Corp.,* 680 F.Supp. 696, 707 (D.N.J.1988) (attorney's fees and litigation costs not recoverable by

---

**3.** The consequential damages to which defendant refers is plaintiff's claim that he "further incurred financial loss in the approximate amount of $95,000.00 of carrying costs, when sale of the property by Mesiti to a buyer in 1988 was delayed due to the necessity of Site cleanup in accordance with state law requirements." Complaint ¶ 11.

private litigants under CERCLA). Accordingly, these claims must be dismissed.

### 4. New Hampshire Statutes

In his third claim for relief, Complaint at ¶¶ 33–43, plaintiff contends that Microdot violated various state environmental protection statutes. Microdot asserts a number of challenges to these statutory claims.

a. RSA 146–A:3–a and 146–C:11 [4]

■ Entitled "Strict Liability for Containment, Cleaning and Removal Costs", RSA 146–A:3–a reads as follows:

I. Any operator or other person who, without regard to fault, directly or indirectly causes or suffers the discharge of oil into or onto any surface or groundwater of this state, or in a land area where oil will ultimately seep into any surface or ground water of the state in violation of this chapter, or rules adopted under this chapter, shall be strictly liable for costs directly or indirectly resulting from the violation relating to:

(a) Containment of the discharged oil;

(b) Cleanup and restoration of the site and surrounding environment, and corrective measures as defined under RSA 146–A:11–a III(a) and (b); and [Amended 1987, 377:3, eff. May 26, 1987.]

(c) Removal of the oil.

II. Nothing in this chapter shall be construed to prevent the party strictly liable from instituting a legal action against any party responsible for causing the spillage for costs incurred by the strictly liable party in complying with this statute.

Section 146–C:11 contains almost identical language.

Plaintiff argues that these statutes, by implication, permit him to hold Microdot strictly liable for the costs of containing, clearing, and removing hazardous wastes from his property. Nothing in section 146–A:3–a, however, allows a private litigant to hold a prior owner strictly liable for such costs. Subsection I of that provision instead permits *the state* to hold those who discharge oil into surface or ground waters strictly liable for relevant costs; subsection II recognizes that the party held strictly liable may maintain an action *in negligence* against "any party responsible for causing the spillage." Thus, plaintiff is not entitled to invoke the "strict liability" provision of RSA 146–A:3–a against Microdot.

Plaintiff contends that *Bagley v. Controlled Environment Corp.*, 127 N.H. 556, 503 A.2d 823 (1986), and *Moulton v. Groveton Papers Co.*, 112 N.H. 50, 289 A.2d 68 (1972), permit just such an implied "private cause of action." To the contrary, in *Moulton*, the New Hampshire Supreme Court adopted the traditional rule that the violation of a standard of conduct established by statute is a tort. *Bagley* applies that rule to an environmental statute. Nothing in either case supports plaintiff's contention, and, accordingly, no claim is available to plaintiff under RSA 146–A:3–a or 146–C:11.

b. RSA 146–A:10

■ RSA 146–A:10 [5] permits owners of property damaged by the discharge of oil to recover from the polluter double the amount of damages. The plain language of this law demonstrates that the legislature intended to provide protection to neighbors of those who cause oil pollution, not to subsequent owners of the polluter's property. Thus, plaintiff's reliance on section 146–A:10 is misplaced.

c. RSA 147–B:10

■ (1) RSA 147–B:10 makes the owner or operator of a facility from which

---

**4.** RSA 146–C:2 creates no cause of action, but rather establishes a statutory duty, stating, "No owner or operator shall discharge or dispose of any oil as defined in this chapter from any facility into or onto land, groundwater, or surface waters of the state."

**5.** **146–A:10 Tort Liability to Third Persons.** Any person who negligently or intentionally

discharges or spills oil into or on the waters of any lake, pond, river, stream, or into tidal waters or into the groundwaters of the state which causes damage to the property of another shall be liable in tort to the person whose property is so damaged in double the amount of the damages sustained by him.

hazardous waste was disposed "strictly liable for costs incurred by the state in responding to a release of hazardous material." RSA 147–B:10 III(a) authorizes the state attorney general to bring a legal action to recover such costs. RSA 147–B:10 III(b) is relevant here:

Notwithstanding the rights of the state under subparagraph (a) above, any person who has expended funds to remedy environmental damage may also bring an action in the superior court for the county in which the facility is located against any person who may be liable for such damage pursuant to paragraph I of this section. Such person's right to contribution shall be limited to expenditures which are incurred for the purposes described in paragraph II of this section and which are consistent with the laws and rules of the state of New Hampshire. A person's right to recovery under this section shall not be barred by the fact that the party bringing the action is itself liable to the state under this section.

As this paragraph makes clear, plaintiff will only recover from Microdot that share of the costs for which Microdot is responsible. If, however, plaintiff is able to show that Microdot is responsible for all costs incurred, plaintiff will be entitled to recover all those costs. The Court rejects Microdot's attempt to limit plaintiff's claims under RSA Ch. 147–B to contribution.

■ The Court also rejects Microdot's assertion that any claim for contribution is time barred. Under Microdot's theory, the New Hampshire statute of limitations for contribution actions is one year. Since the response costs were incurred in 1986 and 1987, and since this lawsuit was filed in 1989, Microdot argues that the claim for contribution cannot survive. This argument misconstrues New Hampshire law.

Relevant here is RSA 507:7–g III (1986), which defines the time limitation for bringing a contribution claim.

If a judgment has been rendered, the action for contribution must be commenced within one year after the judgment becomes final. If no judgment has

been rendered, the person bringing the action for contribution must have either (a) discharged by payment the common liability within the period of the statute of limitations applicable to the claimant's right of action against that person and commenced the action for contribution within one year after payment, or (b) agreed while action was pending to discharge the common liability and, within one year after the agreement, have paid liability and commenced an action for contribution.

In this case, no judgment has yet been rendered, plaintiff has neither discharged the common liability nor agreed to discharge the liability. Accordingly, the one-year limitation established in RSA 507:7–g III has not yet begun to run.

■ (2) Microdot also contends that RSA 147–B:10 does not permit plaintiff to recover consequential "carrying costs" caused by a delay in the sale of the property, or attorney's fees. Plaintiff does not oppose this contention.

RSA 147–B:10 permits the recovery of specified "response costs" which are defined as costs relating to containment, 147–B:10 II(a), cleaning, 147–B:10 II(b), and removal, 147–B:10 II(c), of hazardous waste. No other costs are allowed under this statute. Plaintiff is therefore not entitled to consequential costs or attorney's fees under authority of RSA 147–B:10.

■ (3) Microdot also argues that RSA Ch. 147–B cannot be applied retroactively to hold it liable for damages caused by hazardous wastes discharged before the statute was enacted. For the reasons that follow, the Court cannot agree.

First, it is clear that the New Hampshire Legislature intended RSA Ch. 147–B to apply retroactively. That legislative intent is made manifest in the first section of the statute.

I. The general court hereby finds that as a result of *past* hazardous waste dumping activities, the potential for spills of hazardous materials and the present lack of proper hazardous waste treatment, storage or disposal facilities within

the state, the problem of managing hazardous waste and the movement of hazardous materials in the state has become a matter of great concern. The general court further finds that the public health and safety and the environment are seriously threatened due to hazardous wastes which *have been previously* discharged or disposed of in an environmentally unsound manner and by the possibility of future improper disposal or spills of hazardous wastes.

II. The general court hereby declares that the purpose of chapter 147–B is to provide for the proper, adequate and safe cleanup of sites within New Hampshire where hazardous wastes or materials *have been* improperly discharged, disposed of or spilled. It is the intent of this chapter to provide for financial capability and procedures which will expedite the cleanup of hazardous wastes and materials and encourage private organizations to assist in that effort.

N.H. RSA 147–B:1 (emphasis added). *Compare United States v. Northeastern Pharmaceutical,* 810 F.2d 726, 732–33 (8th Cir.1986) ("it is manifestly clear that Congress intended CERCLA to have retroactive effect").

 Microdot takes the position that RSA Ch. 147–B cannot be applied retroactively consistent with Part I, Article 23, of the New Hampshire Constitution, which reads as follows:

Retrospective laws are highly injurious, oppressive and unjust. No such laws, therefore, should be made, either for the decision of civil causes, or the punishment of offenses.

Not all "retroactive" laws are unconstitutionally "retrospective". A retroactive law "does not contravene the provision of Article 23, Bill of Rights, New Hampshire Constitution, if it affects the remedy only and is not oppressive or unjust." *Norton v. Patten,* 125 N.H. 413, 416, 480 A.2d 190, 192 (1984) (quoting *Pepin v. Beaulieu,* 102 N.H. 84, 89–90, 151 A.2d 230, 235 (1959)).

That part of RSA Ch. 147–B challenged here did not create a new substantive right. Prior to enactment of RSA 147–B:10 III(b),

a person who expended funds to remedy environmental damage was entitled to seek compensation by medium of a common law claim for nuisance. *See, e.g., Crocker v. College of Advanced Science,* 110 N.H. 384, 268 A.2d 844 (1970) (sewage discharged on adjoining property); *Lane v. City of Concord,* 70 N.H. 485, 49 A. 687 (1901) (lot owner can be held liable for creating nuisance by depositing rubbish on his lot if "foul or unhealthy gases or other substances or odors escape"); *Davis v. Whitney,* 68 N.H. 66, 44 A. 78 (1874) (neighbor sued mill for producing "lint, dust, and smoke of a sickening odor"); *Ladd v. Granite State Brick Co.,* 68 N.H. 185, 37 A. 1041 (1895) (neighbor sued brick manufacturer for causing an offensive odor). RSA 147–B:10 III(b) codified and restructured this common law action. It did not "create[ ] a new obligation," *Woart v. Winniek,* 3 N.H. 473, 479 (1826), or "impose a new duty," *id.,* where none existed before.

A retrospective statute does not violate Article 23 of the New Hampshire Constitution "if it effects the remedy only and is not oppressive or unjust." *Norton v. Patten,* 125 N.H. 413, 416, 480 A.2d 190, 192 (1984) (quoting *Pepin v. Beaulieu,* 102 N.H. 84, 89–90, 151 A.2d 230, 235 (1959)). The Court herewith finds that RSA 147–B:10 III(b) is neither oppressive nor unjust. The statute is remedial; it authorizes private parties to clean up hazardous waste sites and then seek recovery of their response costs from responsible parties. And, like its federal counterpart, it must reach past conduct to be effective. *See United States v. Northeastern Pharmaceutical, supra,* 810 F.2d at 733 ("In order to be effective, CERCLA must reach past conduct."). RSA 147–B:10 III(b) is not unconstitutionally retrospective.

This conclusion is not inconsistent with *United States v. Ottati & Goss,* 630 F.Supp. 1361, 1414–15 (D.N.H.1985), in which this court found that another New Hampshire hazardous waste statute, RSA Ch. 147–A, did violate Part I, Article 23, of the New Hampshire Constitution. The reason is simple: RSA Ch. 147–A altered sub-

stantive rights. It created criminal penalties where none existed before. As that decision makes clear,

N.H. RSA ch. 147–A and its predecessor N.H. RSA § 147:148–57 create new obligations, impose new duties and attach new disabilities. During the time before July 1, 1979, there was no state regulation of hazardous waste disposal. No permits were required (except N.H. RSA 149 controlling discharges into surface waters). The State was aware of the activities taking place at both sites. There is evidence that the state employees visited the Ottati & Goss sites and found it a rather clean site prior to July 1979. The evidence also proves that up to that time, the State found no indication or hint of law breaking. This court finds that to allow the State to enforce N.H. RSA ch. 147–A and its predecessor to the activities occurring before July 1, 1979, without any evidence of legislative intent to do so, is to apply a new law retrospectively in violation of the New Hampshire Constitution.

*Id.* at 1415. Unlike RSA Ch. 147–A, Ch. 147–B does not impose criminal sanctions for past behavior.[6] Instead, it establishes a hazardous waste cleanup fund which has a remedial purpose; i.e., to remedy the effects of hazardous waste discharge. *Ottati & Goss* does not support Microdot's contention that RSA Ch. 147–B is unconstitutional.

Finally, the Court rejects Microdot's argument that the RSA Ch. 147–B claim must be dismissed because the statute applies only to "nonqualifying CERCLA sites." RSA 147–B:6 I. Microdot has not shown that the Keene, New Hampshire, property is a "qualifying" CERCLA site; absent such evidence, this claim survives.

### 5. Negligence

 Microdot also moves to dismiss plaintiff's negligence claims because (a) these claims are not pled with the specificity required of Rule 9(f), Fed.R.Civ.P., and

(b) plaintiff does not allege any injury to his person or property.

Microdot's position finds no support in the cited authorities. *Kincheloe v. Farmer,* 214 F.2d 604, 605 (7th Cir.1954), and *Perry v. The Hartz Mountain Corp.,* 537 F.Supp. 1387, 1391 (S.D.Ind.1982), represent the well-established rule that *defamation* claims must clearly identify the time and place of the alleged defamatory statements. That defamation rule does not apply here. And *T & E Indus., Inc. v. Safety Light Corp.,* 680 F.Supp. 696, 707–08 (D.N.J.1988), does not, contrary to Microdot's assertions, have anything to do with the doctrine of caveat emptor. The negligence claims therefore survive.

### CONCLUSION

For the reasons set forth herein, defendant's motion to dismiss (document no. 3) is denied, except that,

1. Plaintiff may not recover costs for remediation of oil contamination, consequential damages, or attorney's fees under authority of CERCLA; and

2. Plaintiff may not pursue independent claims based on RSA 146–A:3–a, 146–C:2, or 146–C:11. These statutes do not create, either expressly or by implication, independent private causes of action. Violation of standards of conduct set forth in these statutes may, however, support a negligence *per se* theory.

While the Court agrees that many of defendant's arguments are poorly presented and unpersuasive, Rule 11 sanctions are not here appropriate. Plaintiff's request for an award of costs involved in responding to defendant's motion is therefore denied.

SO ORDERED.

### APPENDIX A

*RSA 510:4 II*

**II. Service of Process on Secretary of State.** Service of process upon any

---

**6.** RSA 147–B:11 does subject a generator of hazardous waste to criminal penalties, but not for the creation of hazardous waste. That statute

makes it a crime to fail to pay a required fee or to knowingly give false information to the state division of waste management.

person who is subject to the jurisdiction of this state, as provided in this section, may be made by leaving a copy thereof, with a fee of $10, in the hands or office of the secretary of state. Such service shall be of the same legal force and effect as if served on the defendant at his abode or place of business in the state or country where he resides and according to the law of that state or country, provided that notice thereof and a copy of the process is forthwith sent by registered mail, postage prepaid, by the plaintiff or his attorney to the defendant at his last known abode or place of business in the state or country in which the defendant resides. The defendant's return receipt and an affidavit of the plaintiff or his attorney of compliance with the section shall be appended to the process and entered therewith. In the event that the notice and a copy of the process are not delivered to or accepted by the defendant, the court may order such additional notice, if any, as justice may require.

*RSA 293–A:119 II* (Service of Process on Foreign Corporation)

II. Whenever a foreign corporation authorized to transact business in this state shall fail to appoint or maintain a registered agent in this state, or whenever any registered agent cannot with reasonable diligence be found at the registered office, or whenever the certificate of authority of a foreign corporation shall be suspended or revoked, then the secretary of state shall be an agent for the corporation upon whom any process, notice, or demand may be served. Service on the secretary of state of any process, notice, or demand shall be made by delivering to and leaving duplicate copies of the process, notice or demand at the office of the secretary of state.

*RSA 293–A:121*

**Appointment of Process Agent by Foreign Corporation.** If a foreign corporation makes a contract to be performed in whole or in part by either party in New Hampshire, or if the foreign corporation commits a tort in whole or in part in New Hampshire, the acts shall be deemed to be doing business in New Hampshire by the foreign corporation and shall be deemed equivalent to the appointment by a foreign corporation of the secretary of state of New Hampshire and his successors to be its true and lawful attorney upon whom may be served all lawful process in any actions or proceedings against the foreign corporation arising from or growing out of the contract or tort. The making of a contract or the committing of a tort shall be deemed to be the agreement of the foreign corporation that any process against it which is served upon the secretary of state shall be of the same legal force and effect as if served on the foreign corporation at its principal place of business in the state or country where it is incorporated and according to the law of that state or country.