Belknap
No. 93-711

DAVID DECKER

v.

MARSHALL N. DECKER & a.

June 9, 1995

*Normandin, Cheney & O'Neil,* of Laconia (*Duncan J. Farmer* on the brief and orally), for the plaintiff.

*Douglas & Douglas,* of Concord, and *Marshall N. Decker, pro se* (*Susanna G. Robinson* and *Charles G. Douglas, III* on the brief, and *Mr. Douglas* and *Mr. Decker* orally), for the defendants.

HORTON, J. The defendants, Marshall Decker and J.E.D. Associates, Inc. (JED), appeal a decision of the Superior Court (*McHugh,* J.) holding that the plaintiff, David Decker, owns a ten percent equity interest in the defendants' real estate venture, and awarding him $70,000 in damages, $15,000 in accounting fees, and ten percent of future profits. We affirm the ten percent equity interest and the award of accounting fees, and reverse and remand for a complete accounting of the venture's operations to determine the damages to be awarded.

In 1978, JED, a corporation controlled by defendant Marshall Decker, purchased a 122-acre tract of land in Danville with the intention of developing it for residential use. JED financed the $100,000 purchase price with a $2,000 downpayment and a $98,000 mortgage. In 1979, JED sold David Decker, defendant Marshall Decker's brother, a ten percent

equity interest in the property to be developed for $15,000. David Decker borrowed $20,000 from a bank and delivered $15,000 to JED. David Decker expressed concern that he might not be able to make the monthly payments on the loan, and Marshall Decker offered to help with the payments. JED made all of the payments on David Decker's $20,000 note.

From 1981 through 1985, JED developed the property into a manufactured housing site called Cotton Farm Village (CFV). JED built improvements such as roadways, water and septic systems, and twenty apartment units, at a total cost of approximately $1.17 million, and incurred an additional $1.26 million in operating expenses. These expenditures were financed from three sources. First, JED refinanced CFV so that when it was fully developed at the end of 1985, the mortgage was approximately $800,000. Second, JED invested approximately $1.28 million it generated from selling 140 manufactured homes, most or all of which were placed on CFV's rental lots. Finally, the rental lots and CFV's twenty apartment units generated about $350,000 in rents through 1985. CFV became profitable in 1986. Since then, JED has taken out approximately $1,000,000 in additional mortgage debt, largely for purposes unrelated to CFV, and serviced this debt with CFV revenues.

In 1986, David Decker initiated a bill in equity, seeking: (1) the imposition of a constructive trust on property owned by the defendants; (2) an order enjoining the defendants from selling, transferring, or otherwise divesting CFV or any other of their assets; (3) an accounting of the financial dealings relating to CFV; and (4) partition of the property so that in the future, his ten percent share would be handled solely by him. The trial court determined that David Decker owned a ten percent equity interest in CFV, awarded him damages of $100,000, less $30,000 for payments the defendants made on his note, awarded him $15,000 in accounting fees, and made a series of orders directed at protecting David Decker's ten percent equity interest and share of profits thereafter. On appeal, the defendants argue that the trial court erred: (1) by ruling that their payment of David Decker's note did not extinguish his equity interest; and (2) by refusing to reduce David Decker's damages by his share of the losses CFV suffered during its initial years of development.

■■ "The propriety of affording equitable relief in a particular case rests in the sound discretion of the trial court to be exercised according to the circumstances and exigencies of the case." *Crocker v. Canaan College,* 110 N.H. 384, 388, 268 A.2d 844, 847 (1970). We review the equitable order of the trial court under the abuse of discretion standard. We are not persuaded by the defendants' argument that their payment of David Decker's note constituted a

return of consideration which extinguished his ten percent equity interest in CFV. In a letter dated August 31, 1979, JED acknowledged receipt of David Decker's $15,000 as a ten percent equity interest in the property and concluded, "We look forward to a profitable arrangement in this venture." David Decker's ten percent equity interest in CFV could not be extinguished, absent agreement to such effect, by simply paying an amount equivalent to its purchase price with interest. In 1979, JED needed cash to develop CFV, which then consisted of little more than 122 undeveloped acres bought for $100,000, and encumbered by a $98,000 mortgage. David Decker used his credit to borrow the $15,000 he advanced to JED to fund CFV. In exchange for these funds and the associated risk, he received an equity interest. Although over time the defendants made the payments on David Decker's note, the record supports the trial court's finding that these payments were not a return of consideration, but rather payments "inextricably linked to David Decker's investment" in CFV, which must be "credit[ed] towards what the defendants owe David in terms of David's investment."

■ The defendants next argue that damages were based upon CFV's profits and did not properly consider the losses CFV suffered during its development. The trial court declined to charge David Decker's share of profits with a corresponding share of losses because it found that CFV's losses were more than offset by the $1.28 million that JED earned from sales of manufactured homes. A review of the record, however, reveals that this analysis does not properly account for the following facts: (1) JED reinvested those profits in CFV; (2) such reinvestment benefited David Decker as the holder of a ten percent interest; and (3) some of those profits were generated because CFV offered rental lots for the homes. While the plaintiff has presented proof of damages, these facts undermine the essential finding upon which the trial court formulated its equitable award: that CFV's losses were offset by JED's earnings from the sales of homes. We agree with the defendants that the amount of damages cannot be equitably calculated without a proper consideration of the full financial accounting of all sources and uses of funds and their allocations for the entire period of CFV's existence. *See Crocker,* 110 N.H. at 388, 268 A.2d at 847. We therefore reverse and remand for a proper accounting and consideration of CFV's finances.

■ On remand, we leave the appropriate accounting procedures to the parties and the trial court, with several caveats. The accounting should consider: (1) CFV's capital and operating expenses, the sources of payment for these expenses, and the appropriate allocation of the responsibility for these payments; (2) the allocation of earnings from

the sale of manufactured homes between JED, which marketed and sold the homes, and CFV, which offered the land and the infrastructure; and (3) whether the additional million dollars in mortgage debt incurred after 1986 was a return of capital or a repayment of debt to JED for its investment in CFV, or whether some of that borrowing did not inure to the benefit of CFV and therefore should not be serviced by CFV revenues. Finally, the trial court should review and revise accordingly the series of orders it issued to protect and preserve David Decker's equity interest and his share of future profits.

*Affirmed in part; reversed in part; remanded.*

All concurred.