Town of Hopkinton, Webster v. Warner  CV-97-159-JD  12/23/97

UNITED STATES DISTRICT COURT FOR THE
                       DISTRICT OF NEW HAMPSHIRE


Towns of Hopkinton
and Webster, New Hampshire

     v.                              Civil No. 97-159-JD

Town of Warner, New Hampshire


                            O R D E R


     The plaintiffs, the towns of Hopkinton and Webster, New
Hampshire, brought this action against the defendant, the town of
Warner, New Hampshire, asserting state and federal claims and
seeking (1) recovery of the response costs expended and to be
expended for closing and monitoring a sanitary landfill; (2)
contribution from the defendant for those costs; (3) a
declaratory judgment finding the defendant liable for future
costs; and (4) damages for environmental contamination to the
site resulting from the disposal of the defendant's contaminants.
Before the court is the defendant's motion to dismiss counts III
and IV (document no. 4).


                         Background[1]

     From 1975 through 1989, the defendant arranged for disposal

------

     [1]The facts relevant to the instant motion are not in dispute or
have been alleged by the plaintiffs.

or treatment of its hazardous substances at a sanitary landfill in Hopkinton ("the site") operated by the plaintiffs. In 1996, pursuant to New Hampshire law, the plaintiffs contracted for the construction of a closure plan governing how the plant would be taken out of operation, and construction has begun on the project. The plaintiffs have incurred costs in connection with implementing the plan, and the plaintiffs will continue to incur substantial costs for the investigation and clean up of the site as a result of the defendant's hazardous substances.

The plaintiffs brought this action on March 28, 1997. In counts I and II, they seek response cost recovery and contribution for response costs, respectively, under the Comprehensive Environmental Response, Compensation and Liability Act of 1980 ("CERCLA"), 42 U.S.C.A. §§ 9601-9662 (West 1995 & Supp. 1997). In counts III and IV, they seek response costs under a theory of strict liability and contribution for those costs, respectively, under state law. On May 19, 1997, the defendant moved to dismiss pursuant to Fed. R. Civ. P. 12(b)(6) for failure to state a claim upon which relief can be granted. However, because the defendant filed an answer to the plaintiffs' complaint on April 22, 1997, the pleadings have closed under Fed. R. Civ. P. 7(a). Thus, the court will treat the defendant's motion to dismiss as a motion for judgment on the pleadings. See Fed. R. Civ. P. 12(c).

2

## Discussion

The standard for evaluating a Rule 12(c) motion for judgment on the pleadings is essentially the same as the standard for evaluating a Rule 12(b)(6) motion. See Republic Steel Corp. v. Pennsylvania Eng'g Corp., 785 F.2d 174, 182 (7th Cir. 1986). In both cases, the court's inquiry is a limited one, focusing not on "whether a plaintiff will ultimately prevail but whether [it] is entitled to offer evidence to support the claims." Scheuer v. Rhodes, 416 U.S. 232, 236 (1974) (motion to dismiss under Fed. R. Civ. P. 12(b)(6)). In making its inquiry, the court must accept all of the factual averments contained in the complaint as true, and draw every reasonable inference in favor of the plaintiffs. See Garita Hotel Ltd. Partnership v. Ponce Fed. Bank, 958 F.2d 15, 17 (1st Cir. 1992) (Rule 12(b)(6) motion); Santiago de Castro v. Morales Medina, 943 F.2d 129, 130 (1st Cir. 1991) (Rule 12(c) motion). Great specificity is not required to survive a Rule 12 motion. "[I]t is enough for a plaintiff to sketch an actionable claim by means of 'a generalized statement of facts.'" Garita, 958 F.2d at 17 (quoting 5A Charles A. Wright & Arthur R. Miller, Federal Practice and Procedure § 1357 (1990)). In the end, the court may not enter judgment on the pleadings unless it appears "'beyond doubt that the plaintiff can prove no set of facts in support of his or her claim which would entitle him or her to

3

relief.'" <u>Santiago de Castro</u>, 943 F.2d at 130 (quoting <u>Conley v.</u>
<u>Gibson</u>, 355 U.S. 41, 45-46 (1957)); <u>see also</u> <u>Rivera-Gomez v. de</u>
<u>Castro</u>, 843 F.2d 631, 635 (1st Cir. 1988).


I. <u>Liability Under N.H. Rev. Stat. Ann. § 147-B:10</u>

Count III of the plaintiffs' claim is based on New Hampshire
Rev. Stat. Ann. ("RSA") § 147-B:10(III) (1996 & Supp. 1997).[2]

---

[2]The statute reads, in pertinent part:

    I.   [A]ny person who:

         . . .

         (c) By contract, agreement, or otherwise arranged for
         disposal or treatment . . . to any facility of
         hazardous waste or hazardous materials owned, possessed
         or controlled by such person;

         . . .

    shall be strictly liable for all costs incurred by the state
    in responding to a release or threatened release of
    hazardous waste or hazardous material at or from the
    facility [as specified by statute] . . . .

    . . . .

    III. . . . .

         (b) . . . [A]ny person who has expended funds to remedy
         environmental damage may also bring an action . . .
         against any person who may be liable for such damage
         pursuant to paragraph I of this section. . . . A
         person's right to recovery under this section shall not
         be barred by the fact that the party bringing the
         action [i.e. the plaintiff] is itself liable to the
         state under this section.

4

The plaintiffs have expended funds to remedy environmental damage, and therefore RSA § 147-B:10(III)(b) grants the plaintiffs a private right of action against the defendant in cases where the defendant would be liable to the state pursuant to paragraph I.  See RSA § 147-B:10(III)(b).  The plaintiffs allege the defendant would be liable to the state in this case under paragraph I(c) because the defendant arranged for disposal or treatment of its hazardous substances with the plaintiffs. See RSA § 147-B:10(I)(c).  Although paragraph I holds a party strictly liable for costs incurred by the state relating to environmental cleanup, the statute fails to make explicit the standard of liability when one person brings a private action against another.[3]  See RSA § 147-B:10.  The plaintiffs contend that the statute holds the defendant strictly liable for response costs to close the site while the defendant argues it should not

_____

. . . .

> VII. There shall be no implied cause of action for third party damages against any person under this section to the extent that the person's liability under this section is based solely on the person's ownership of a facility.

RSA § 147-B:10.

[3]The term "person" as used in the statute includes municipalities.  See RSA § 147:B-2(IX).  All of the towns involved in this matter are municipal corporations. See Complaint ¶¶ 5, 6.

be held to a standard of strict liability because this standard applies only to actions brought by the state pursuant to paragraph I.

The case law interpreting the statute generally has focused on issues other than the standard of liability for private actions. See, e.g., Freudenberg-NOK Gen. Partnership v. Liberty Mut. Ins. Co., No. 91-361-M, 1994 WL 263786 (D.N.H. Mar. 21, 1994); Town of Jaffrey v. Town of Fitzwilliam, 846 F. Supp. 3 (D.N.H. 1994). However, as this court stated without extensive analysis in Kleen Laundry & Dry Cleaning Services, Inc. v. Total Waste Management, Inc., No. 91-493-JD, 1994 WL 287747, at *3 (D.N.H. June 28, 1994), RSA § 147-B:10 does provide for strict liability in private enforcement actions. This conclusion is supported by a close reading of the statute.

RSA § 147-B:10(III)(b), which establishes the private right of recovery, reads: "A person's right to recovery under this section shall not be barred by the fact that the party bringing the action is itself liable to the state under this section." RSA § 147-B:10(III)(b) (emphasis added). It is clear from this language that RSA 147-B:10 is the source of the cause of action. RSA § 147-B:10 is entitled "Strict Liability; Civil Action," and the only standard of liability expressed in the statute is one of strict liability. From this, it is reasonable to conclude that

6

the legislature intended that strict liability would apply not only in actions by the state but also in private actions.

Furthermore, the two causes of action in RSA § 147-B:10(III)(b) are referred to in a way that highlights their parallelism. The first sentence of that paragraph notes that the state is empowered to bring an action pursuant to paragraph I, and, "[n]otwithstanding the rights of the state . . ., any person . . . may also bring an action." RSA § 147-B:10(III)(b) (emphasis added). Since there is no language in the statute indicating a contrary intent by the legislature, this parallel structure implies that the two causes of action were intended to operate similarly. Because the court finds no express or implied difference in the statute between the state and private causes of action, it is reasonable to conclude that the legislature intended strict liability to be the governing standard for private actions.

Finally, on August 9, 1996, paragraph VII, the most recent amendment to RSA § 147-B:10, became effective. This provision reads: "There shall be no implied cause of action for third party damages against any person under this section to the extent that the person's liability under this section is based solely on the person's ownership of a facility." RSA § 147-B:10(VII). This paragraph apparently takes the corpus of private actions and

7

carves out an exception to the general rule of strict liability for actions based merely on facility ownership. The legislative history of the amendment supports this conclusion, as the analysis in the New Hampshire General Court states: "Additionally, [the amendment] clarifies the liability of 'innocent' owners of contaminated properties in order to encourage the purchase and cleanup of those sites." 1996 N.H. General Ct., Journal of the House of Reps. 863 (Apr. 17, 1996) (statement of Rep. Dokmo). The maxim expressio unius est exclusio alterius dictates that, by making an exception to the general rule of strict liability exclusively for actions based solely on facility ownership, the legislature intended for strict liability to apply to all other private actions under this statute.[4]

The defendant asserts that Mesiti v. Microdot, Inc., 739 F. Supp. 57 (D.N.H. 1990), stands for the proposition that a statute lacking an express provision imposing strict liability on a defendant in a private action does not impose that standard of liability. However, the Mesiti ruling is easily distinguishable from this case. The statute at issue there, RSA § 146-A:3-a(II),

_____

[4]Neither the statutory text nor the legislative history makes clear what effect use of the term "implied" in paragraph VII was intended to have on the statutory scheme.

simply protects the defendant's ability to pursue a third party in a common law negligence action. See Mesiti, 739 F. Supp. at 63.[5] In this case, the provisions of RSA § 147-B:10(III)(b) create a cause of action "under this section." RSA § 147-B:10(III)(b).

Therefore, the court holds that, except for those limited instances in which the statute provides to the contrary, strict liability is the standard applicable to private actions under RSA § 147-B:10(III), and denies the defendant's Rule 12 motion as to count III.[6]

II. Contribution Under RSA § 507:7-f

In count IV, the plaintiffs claim a right to contribution under RSA § 507:7-f (1997). The statute provides in relevant part: "[A] right of contribution exists between or among 2 or more persons who are jointly and severally liable upon the same

---

[5]RSA § 146-A:3-a(II) reads as follows: "Nothing in this chapter shall be construed to prevent the party strictly liable from instituting a legal action against any party responsible for causing the spillage for costs incurred by the strictly liable party in complying with this statute." RSA § 146-A:3-a(II).

[6]Because the court has determined the standard of liability as a matter of statutory interpretation, it need not consider the plaintiffs' additional argument that RSA § 147-B:10 mirrors the provisions of CERCLA and therefore should impose the same standard of liability.

indivisible claim, or otherwise liable for the same injury, death or harm, whether or not judgment has been recovered against all or any of them." RSA § 507:7-f(I).

The defendant argues that there must be a pending lawsuit against a potentially liable defendant before that party may sue for contribution. It urges that the statute's use of the phrase "whether or not judgment has been recovered" necessarily implies that judgment must at least have been rendered before the action may be brought. Because no judgment has been rendered in this case, the defendant asserts that the plaintiffs' action for contribution should be dismissed. The plaintiffs assert that there need only be an injury in order to make an action for contribution cognizable. They rest their contention on the statutory language "the same indivisible claim, or . . . the same injury, death or harm." They assert that what triggers the right of contribution is the underlying claim rather than a lawsuit seeking to vindicate that claim, as evidenced by the statute's failure to use the term "lawsuit."

The parties have highlighted an ambiguity in RSA § 507:7-f. However, that ambiguity is resolved by RSA § 507:7-g. Section 507:7-g(II) states:

> If the proportionate fault of the parties to the claim for contribution has not been established, contribution may be enforced in a separate action, whether or not a judgment has been rendered against

10

> either the person seeking contribution or the person
> from whom contribution is being sought.

RSA § 507:7-g(II) (1997).  This section makes it clear that judgment need not be rendered against any interested party before contribution may be sought, undermining the defendant's position. Section 507:7-g(II) is further clarified, however, by section 507:7-g(III).  Section 507:7-g(III) states, in relevant part:

> If no judgment has been rendered, the person bringing the action for contribution must have either (a) discharged by payment the common liability within the period of the statute of limitations applicable to the claimant's right of action against that person and commenced the action for contribution within one year after payment, or (b) agreed while action was pending to discharge the common liability and, within one year after the agreement, have paid liability and commenced an action for contribution.

RSA § 507:7-g(III).

The plaintiffs do not meet the requirements of the first alternative because they have not completely discharged the liability for clean-up costs.  The plaintiffs also fail to meet the requirements for the second alternative.  The phrase "agreed while _action_ was pending to discharge the common liability and, within one year after the agreement, have paid liability and commenced _an action_ for contribution" contemplates two separate actions, an action against a defendant and a separate action by

that defendant, as a contribution plaintiff, for contribution against another liable party.  RSA § 507:7-g(III) (emphasis added); see also RSA § 507:7-g(II) ("If the proportionate fault of the parties to the claim for contribution has not been established, contribution may be enforced in a separate action") (emphasis added).  Although the plaintiffs have arguably (1) agreed to satisfy the common liability for response costs and (2) paid part of that liability, they have not done so "while action was pending" against them within the meaning of the statute.  The only pending action is their own action against the defendant and that action cannot both assert the defendant's liability and perform the additional function of maintaining an independent cause of action for contribution.  For these reasons, the court holds that an action for contribution cannot be maintained at this time, and grants the defendant's Rule 12 motion on count IV.

## Conclusion

For the reasons stated above, the defendant's Rule 12 motion

(document no. 4) is denied as to count III and granted as to count IV.

SO ORDERED.


_____
Joseph A. DiClerico, Jr.
District Judge

December 23, 1997

cc:  Russell F. Hilliard, Esquire
     Donald E. Gartrell, Esquire